**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Frederick D. LONG,
Defendant-Appellant.**

No. 48694.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 3, 1985.

Motion for Rehearing and/or Transfer
Denied Oct. 3, 1985.

Application to Transfer Denied
Nov. 21, 1985.

James Jay Knappenberger, Clayton, for defendant-appellant.

George A. Peach, Pros. Atty., St. Louis, for plaintiff-respondent.

STEPHAN, Chief Judge.

Defendant was found guilty of driving while intoxicated, second offense, and was sentenced to nine months in the St. Louis Medium Security Institution. Defendant appeals. We affirm.

On February 25, 1983, defendant Frederick D. Long, his girlfriend Shirley Cunningham, his aunt and uncle, Lydia and Fred Gerding, and approximately six or seven other people had dinner at a restaurant on Compton Avenue in the City of St. Louis. Defendant first arrived at the restaurant about 5:30 p.m., left shortly afterward, and returned about an hour later with another man who joined the group. The group broke up around 10:00 p.m., with everyone

departing in separate cars. Defendant was driving a utility truck owned by his aunt's company, F.A. Enterprises. Mrs. Cunningham and Mr. & Mrs. Gerding all testified that defendant had had three or four drinks, each consisting of wine and seltzer, during the course of the evening, and that defendant did not appear drunk when he left the restaurant.

At approximately 10:00 p.m. that same evening, William Eck and Theresa Michaels (Theresa Eck at the time of trial) were standing on the sidewalk along the 3200 block of North Dakota, unloading Eck's car. They heard a crash, looked up the street and saw a truck up against a parked car which it had apparently hit, then saw the truck back up and hit the car again. The truck proceeded to travel down the street in the direction of Eck and Michaels, weaving back and forth as it did so. As the truck went by, Eck was able to observe the driver of the truck, wrote down the license number, and called the police.

Shortly thereafter, Officer Kevin Burgdorf observed a truck swerving back and forth across the lanes of Grand Avenue near the area where the truck had first been seen by Eck and Michaels. The truck matched the description of the truck and the license number given to the police by Eck, which was broadcast over the air on the police radio.

Burgdorf pursued the truck, which then accelerated. After a short chase, the driver lost control of the truck and the truck came to rest on a sidewalk. The driver, identified by Burgdorf at trial as the defendant, opened the door and fell to the ground. The defendant could not stand without assistance, had a strong alcoholic breath, could not speak clearly, and refused a field sobriety test or a breath test. Eck and Michaels were brought to the scene by the police. Eck identified defendant as the driver of the truck which had hit

the parked car, and both Eck and Michaels identified the truck.

In his first and third points on this appeal, defendant claims that the trial court erred in allowing the State to impeach defense witness Shirley Cunningham who had testified that, as of a few minutes before his arrest, defendant was not intoxicated. On cross-examination, Mrs. Cunningham denied owing defendant "a large sum of money" at the time of trial. Thereafter, the State was allowed to call Assistant Circuit Attorney Nels Moss who testified that, when he was in private practice, he represented her former husband in connection with a motion to modify their divorce decree.[1] At that time, defendant had visited Moss claiming that Mrs. Cunningham owed him several thousand dollars. Defendant gave Moss a number of cancelled checks payable to Mrs. Cunningham which were placed in evidence upon the strength of Moss' identification. The defense objection to Moss' testimony was that it did not impeach Mrs. Cunningham and that the cancelled checks were not probative of a debt. No objection was raised as to Moss' competency as a witness by reason of his status as an Assistant Circuit Attorney.

■ As best we can glean from defendant's marginal compliance with Rule 84.-04(d), his points which attack the rebuttal testimony are essentially that it was error to allow impeachment on a collateral issue and that the testimony improperly put defendant's character in issue. With respect to the latter issue, it is correct that Moss testified that defendant said the debt arose while Mrs. Cunningham was living with defendant. We fail to see how such evidence could have damaged defendant's character in the eyes of the jury, however. Defendant's attorney, in his direct examination of Mrs. Cunningham, had elicited

---

1. A minor discrepancy appears in the record concerning Moss' representation in that case. Although he clearly testified on direct examination that he represented Mrs. Cunningham's husband in the matter, the following exchange appears in the transcript during cross-examination:

Q You didn't represent Mr. Long, of course, did you?
A No, I did not.
Q You represented, Mrs. Cunningham?
A Correct.
This response elicited no reaction from either party and may be the result of reportorial error.

the fact that she and defendant were living together at the time of this offense.

We likewise reject the contention that Moss' testimony constituted improper impeachment of Mrs. Cunningham on a collateral issue. "Pecuniary interest of a witness, or his bias or prejudice, can always be shown." *Weatherly v. Miskle,* 655 S.W.2d 842, 844 (Mo.App.1983). Even if such evidence does not bear directly on the issues of the case, the interest or bias of a witness is always relevant. *State v. Mitchell,* 622 S.W.2d 791, 797 (Mo.App.1981). This is true whether the action be civil or criminal. *State v. Pigques,* 310 S.W.2d 942, 947 (Mo. 1958). The scope of such evidence is subject to the broad discretion of the trial court, *State v. Cameron,* 604 S.W.2d 653, 658 (Mo.App.1980); and we cannot conclude on these facts that such discretion was abused in this case. The testimony of Moss tended to show that defense witness Cunningham could have had good reason to lie for the defendant, in that she was indebted to him, and that she had often received sums of money from him, a practice that would not be likely to continue if defendant were incarcerated.

In another point, defendant claims that the trial court erred in not submitting the range of punishment to the jury for assessment. Defendant, who had a prior conviction for driving while intoxicated, bases this argument on the version of § 577.023 which was in effect on the date of this offense, February 25, 1983. That version, found in the 1982 Cumulative Supplement, RSMo, provides that a person with such a prior conviction may be charged with a class A misdemeanor and that evidence of such prior convictions is to be heard and determined by the court out of the hearing of the jury. The statute, however, is silent as to whether the court or the jury sets the punishment. The statute was amended in 1983, RSMo Cum.Supp.1983, and the version in effect at the time of trial, provides specifically, "The court shall not instruct the jury as to the range of punishment or allow the jury, upon a finding of guilty to assess and declare the punishment as part of its verdict in cases of prior offenders ..."

Defendant argues that it is the 1982 version of § 577.023 which applies in this case, as that was the version of the statute which was in effect at the time the offense occurred. Defendant urges that the 1982 statute's silence on the issue of assessment of punishment implies that this duty remains in the province of the jury. He also alludes to the possible violation of state and constitutional safeguards regarding his right to a trial by jury, claiming in his brief that, "A legislature dealing with enhanced punishment by a Judge is essentially deviating from the constitutional imperative of trial by jury." Defendant misconstrues the parameters of the right to a trial by jury. Such right, which is guaranteed under the United States and Missouri Constitutions, does not require that the determination of punishment be made by a jury. *State v. Morton,* 338 S.W.2d 858, 861–862 (Mo. 1960). Moreover, the 1983 version of § 577.023 does not provide for enhanced punishment, beyond that allowed under the 1982 version; rather, it merely provides for a different procedure to be used for sentencing once an initial determination has been made that a defendant is a prior offender.

Our Supreme Court has consistently held that new or amended versions of statutes which change sentencing procedures to allow imposition of sentence by the court rather than the jury are to be applied to trials taking place after the effective date of such new or amended statute, notwithstanding that the crime charged occurred while the prior statute was still in effect. *State v. Morton,* supra, at 862–863 (Mo. 1960); *State v. Griffin,* 339 S.W.2d 803 (Mo.1960). The holding of these two cases is aptly summarized and reaffirmed by the Supreme Court in *State v. Adamson,* 346 S.W.2d 85, 87 (Mo.1961):

It is contended that because the offense was committed prior to the effective date of our present Second Offense Act, § 556.280, RSMo 1959, V.A.M.S. the provisions of that Act permitting the court to fix the punishment were applied ex post facto. The trial court proceeded under the new Act, and properly so, for

this court has held that the change thus made was procedural, that the new Act might properly be applied upon trial for an offense committed before its effective date, and that no constitutional rights of a defendant were thus violated.

The Court, sitting en banc, more recently reiterated the pronouncement of *Morton* and *Griffin* in *State ex rel. Peach v. Bloom*, 576 S.W.2d 744 (Mo. banc 1979). In that case the previous statute rather than the newer statute was held to apply to the trial of the defendant therein. However, the Court found that the statute in question, § 556.031, contained a savings provision which indicated a legislative intent to apply the prior statute to situations where the offense was committed prior to the effective date of the new statute but trial was held thereafter. Absent a savings clause in a newly enacted or amended statute, the prior statute "would be inapplicable to a proceeding tried after the effective date of an amendatory law." *Peach*, supra, at 746.

The rationale of the Court in all of the above-cited cases turns on the classification of the statute in question as being procedural in nature. In such a situation there is no violation of any rights of a defendant in allowing a change in procedure, such as sentencing by the trial judge rather than the jury, to apply to crimes which pre-date the effective date of the change. No new crime is created by such a change; neither is the punishment enlarged. In the instant case, a defendant who is found to be a prior offender of the DWI laws would, if convicted, be guilty of a class A misdemeanor under both the 1982 version of § 577.023, and the 1983 version. The punishment is not, as defendant claims, "enhanced" by the amended form of § 577.023; it is merely assessed by a procedure other than submitting the issue to a jury. Defendant's point is without merit.

In his final point, defendant contends that the trial court erred in permitting Officer Burgdorf to testify that defendant refused to take a breathalyzer test. He claims that the refusal proves nothing

and that it was irrelevant to the issue of intoxication. Although it has been held to be error to admit such evidence, *City of St. Joseph v. Johnson*, 539 S.W.2d 784 (Mo. App.1976), such error is harmless where, as here, other evidence of guilt is strong. *State v. Bellew*, 586 S.W.2d 461 (Mo.App. 1979). Moreover, the Supreme Court of the United States has recognized that evidence concerning a driver's refusal to take a sobriety test "is similar to other circumstantial evidence of consciousness of guilt, such as escape from custody and suppression of evidence." *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 921, 74 L.Ed.2d 748 (1983). There, the Court held that such evidence is not protected by the privilege against self-incrimination and that, even though the defendant was not warned that his refusal could be used against him, defendant's right to due process was not denied where, as here, defendant was told that his refusal could result in the loss of his license.

The judgment is affirmed.

SIMON, P.J., and KAROHL, J., concur.