Monroe SMITH, Jr. *v.* STATE of Arkansas

CR 86-160                               722 S.W.2d 853

Supreme Court of Arkansas
Opinion delivered February 2, 1987

*Chandler & Thomason*, by: *J.G. Molleston*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Blake Hendrix*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant was convicted of delivering marijuana, and he was sentenced as an habitual offender to imprisonment for twenty-five years. He asserts two points for reversal. First, he contends evidence which could not have been admitted against him at the time the crime was committed was made admissible by legislation which became effective before he was tried. He argues the legislative act making the evidence admissible is *ex post facto* legislation as it was applied in his case and is thus prohibited. We conclude the legislation did not violate U. S. Const., art. 1, § 10, which provides that no state shall pass any *ex post facto* law. We also conclude that the provision in Ark. Const. art. 2, § 17, that no *ex post facto* law shall be passed, was not violated.

The appellant's second point is that the court erred in restricting his right to impeach through cross-examination one of the state's witnesses. We find the appellant has not shown the court abused its discretion in limiting the cross-examination.

The facts bearing on the first point are not disputed. Sylvester Easter had been apprehended by police for stealing a video cassette recorder. Easter testified that as part of a "deal" with Detective Lancaster of the Magnolia Police Department he agreed to "make buys" of marijuana. Lancaster concealed a transmitter on Easter and then, from a distance, he observed Easter approach the appellant and two other persons at the appellant's residence while listening to their voices on a receiver in a car. A tape recording of the conversation was produced at the trial, but it was virtually unintelligible. Lancaster testified, however, about what he heard Easter and the appellant saying to each other in the course of the drug transaction in which Easter purchased marijuana from the appellant.

The drug transaction, which both Easter and Lancaster described on the witness stand, occurred on January 18, 1986. On that date there were in effect Acts 666 and 705 of 1985, codified as Ark. Stat. Ann. §§ 41-4501 through 41-4509 (Supp. 1985). Section 41-4502 provided that evidence derived from an intercepted oral communication was not admissible as evidence in a court unless the interception had been authorized by a circuit

court upon application by the prosecutor, § 41-4503, and the application granted pursuant to the strict guidelines of § 41-4505. An "oral communication" was defined in § 41-4501(2) as one "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." It is clear that Lancaster did not comply with the statutes prior to intercepting the appellant's conversation with Easter, and that § 41-4507 made his actions and failure to comply with the statutory requirements a felony.

On April 30, 1986, Act 1 of 1986 became effective. It repealed Acts 666 and 705 of 1985, and it purported to repeal them "*ab initio.*" The appellant was tried on May 9, 1986. Lancaster's testimony was admitted over the appellant's objection that the repeal of the law, which would have precluded its admissibility at the time of the crime, was *ex post facto* legislation.

## 1. Ex post facto legislation

The appellant urges that the change in the law affecting his case was substantive rather than procedural because the repealed law had made it a felony for anyone to receive "oral communications" in violation of the act. Thus he contends that because the act purported retroactively to relieve Lancaster from being accused of a felony the appellant's substantive rights were affected. His explanation is that he has lost the protection he would have had from the law making Lancaster's conduct feloneous. He cites no authority for this oblique rationale, and we know of none.

In support of his argument that the evidence of his conversation overheard by Lancaster is inadmissible, the appellant cites *Kring* v. *Missouri*, 107 U.S. 221 (1882). Missouri law at the time of the offense provided that a conviction of second degree murder constituted acquittal of first degree murder. The Missouri Constitution was thereafter altered to provide that if a conviction of second degree murder were lawfully set aside it would not bar conviction of a higher crime. The Supreme Court said, in finding the revision constituted *ex post facto* law, that a law may not lawfully be changed between the time of the offense and the time of the trial if it alters the situation of a party to his disadvantage. 107 U.S. at 235. The Supreme Court noted the state's argument

that the change was procedural only, but stated it affected the defendant's substantive rights by, in essence, increasing the punishment after the fact and by removing a defense he would have had in his second trial.

The appellant also cites two cases from United States Circuit Courts of Appeals following *Kring* v. *Missouri, supra.* In *United States* v. *Henson*, 486 F.2d 1292 (D. C. Cir. 1973), the court considered a change in the law which required prior convictions be admitted to impeach a criminal defendant who chose to testify. At the time of the offense, the law permitted the trial judge to decide within his discretion whether the prior convictions would be admitted. It was held that the change was *ex post facto* law because the accused had, at the time of the offense, a significant and substantial right to have the court exercise its discretion. To the extent the new scheme deprived the accused of that right after the offense and before his trial, its application would be *ex post facto* law prohibited by Article I, Section 9, Clause 3, of the United States Constitution which says Congress shall pass no such law.

*Government of the Virgin Islands* v. *Civil*, 591 F.2d 255 (3rd Cir. 1979) was a case in which it was found that the statute requiring corroboration of accomplice testimony was repealed after the appellants' trial but before consideration on appeal. The appellate court held that to allow the repeal to control the outcome on appeal would make *ex post facto* legislation of the repeal because it would have the effect of making the amount of proof necessary to sustain the conviction less than what was required at the time of the offense.

We find nothing in *Kring* v. *Missouri, supra*, or *Government of the Virgin Islands* v. *Civil, supra*, which would require reversal here. We do not have a defendant who has lost a defense or been subjected to a trial in which "less evidence" in any direct sense is required for conviction than would have been required at the time of the offense. (In part 1.b. of this opinion we consider the relative nature of the term "less evidence.") Nor are we persuaded by *U.S.* v. *Henson, supra*, for in that case, the law deemed *ex post facto* required the introduction against a testifying accused of certain *facts* which might not have been introduced had the law extant at the time of the offense been applied. That is not the

situation before us now. Rather, we are faced with the question whether admission of certain *evidence* of clearly admissible facts violated the *ex post facto* prohibition.

### a. The United States Constitution

In deciding whether Article 1, § 10, of the United States Constitution invalidates the law in question here, we are,` of course, governed by the decisions of the United States Supreme Court. In *Calder* v. *Bull*, 3 U.S. 386 (1798), the Supreme Court stated that *ex post facto* law included ". . . every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offense in order to convict the offender." 3 U.S. at 390. From that broad statement the Supreme Court has wandered several directions. One of the paths taken has resulted in the distinction between substantive and procedural changes. The Supreme Court has said a state has the right to change the procedural rules by which an accused is tried from those which would have governed had he been tried at the time the offense was committed. *Thompson* v. *Utah*, 170 U.S. 343 (1898) (disapproved on other grounds); *Gibson* v. *Mississippi*, 162 U.S. 565 (1896).

In *Hopt* v. *Utah*, 110 U.S. 574 (1884), which is relied upon by the appellee before us, the Supreme Court held that a change in state law permitting the testimony of convicted felons who could not previously have testified against the accused was not *ex post facto* law. We followed *obiter dictum* from *Hopt* v. *Utah, supra*, in *Huckaby* v. *State*, 262 Ark. 413, 557 S.W.2d 875 (1977), in holding that a change in the rules of evidence permitting previously unpermitted testimony of a spouse against an accused was not *ex post facto* law. We quoted from *Hopt* v. *Utah, supra*, and held ". . . statutes which simply enlarge the class of persons who may be competent to testify in criminal cases are not *ex post facto* in their application to prosecutions for crimes committed prior to their passage." 262 Ark. at 417, 557 S.W.2d at 878.

*Huckaby* v. *State, supra*, is not the same as the case before us. Here, we are not dealing with a mere expansion of a class of witnesses who may testify. The change in the law with which we are confronted had nothing to do with whether Lancaster could testify. Rather, it dealt with what he could say. Thus we turn back

to the Supreme Court cases to determine how they have handled the particular question presented by statutes which purport to make admissible, evidence which would not have been admissible at the time the offense was committed. The prime example appears in *Thompson* v. *Missouri*, 171 U.S. 380 (1898). There the Missouri law was changed, by statute, to make admissible into evidence handwriting exemplars which the Missouri Supreme Court had previously held inadmissible in an appeal in which Thompson's first conviction was reversed. On retrial, the exemplars were admitted over Thompson's objection that the statute, which became law between his first and second trials, was *ex post facto* legislation. The Supreme Court held it was not, and said, speaking of *Hopt* v. *Utah, supra, Kring* v. *Missouri, supra,* and *Thompson* v. *Utah, supra:*

> If persons excluded, upon grounds of public policy, at the time of the commission of an offence, from testifying as witnesses for or against the accused, may, in virtue of a statute, become competent to testify, we cannot perceive any ground upon which to hold a statute to be *ex post facto* which does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as enforced by judicial decisions at the time the offence was committed. [171 U.S. at 387]

The Supreme Court has thus departed from the broad statement of *Calder* v. *Bull, supra,* that a law taking effect after the time of the offense and before the trial permitting testimony which would not previously have been admissible is *ex post facto* legislation.

■ We hold the United States Constitution does not invalidate the repealer in question here. *Thompson* v. *Missouri, supra,* interpreting Article 1, § 10 is squarely in point, and it has not been overruled.

### b. The Arkansas Constitution

The precise question before us now has not been the subject of any previous decision interpreting Ark. Const. art. 2, § 17. In *Potter* v. *State,* 42 Ark. 29 (1883), which was perhaps the first case interpreting the prohibition of *ex post facto* laws in our current constitution, we recognized the standard distinction

between laws affecting procedure and those affecting substance. At the time of the crime Craighead County was not divided into judicial districts. It was so divided before the trial, and the accused was tried in the Jonesboro district by a jury selected from that district rather than from the county at large. We held that the law dividing the county into judicial districts was not *ex post facto* as applied in the case because ". . . [i]t does not relate to the punishment of the crime but to the procedure." We applied the same distinction in *Jennings* v. *State*, 276 Ark. 217, 633 S.W.2d 373 (1982), *cert. den.* 459 U.S. 862 (1982).

We have held that when a change in the law between the time of the offense and the time of the trial affects the definition of the crime it is prohibited by our constitutional prohibition against *ex post facto* laws. *See Ex parte Jackson*, 45 Ark. 158 (1885). *Cf. Herman* v. *State*, 256 Ark. 840, 512 S.W.2d 1923 (1974), *reh. den.* 250 Ark. 845-A (1974), *cert. den.* 420 U.S. 953 (1975). We also have found punishment changes prohibited, *Upton* v. *Graves*, 255 Ark. 516, 509 S.W.2d 823 (1973), and have extended that holding to changes in parole laws. *Bosnick* v. *Lockhart*, 283 Ark. 206, 672 S.W.2d 52 (1984), *reh. den.* 283 Ark. 209, 677 S.W.2d 292 (1984). Perhaps all of these decisions could be said to relate to prohibiting substantive law changes *ex post facto*. Perhaps our decision in *Huckaby* v. *State, supra*, in which we did not say whether we were interpreting the Arkansas Constitution or the United States Constitution, or both, could be said to have allowed an *ex post facto* procedural change. The distinction between substance and procedure is, however, capable of blurring. Rather than label the change in question, we prefer to look to the reason behind the *ex post facto* provision in our constitution and apply it to the facts before us.

Certainly a person has the right to be guided in his actions by the law at the time he acts. Does he have the same right to be tried on the basis only of evidence admissible against him at that time? Although we are not required to follow it in our interpretation of the Arkansas Constitution, we are persuaded by the logic of *Thompson* v. *Missouri, supra*. The change in the law in this case did not make any *fact* admissible to prove the crime alleged which would not have been admissible at the time of the crime. Rather, it made admissible *testimony* which would not have been admissible at the time of the crime.

In *Culbertson* v. *Virginia*, 137 Va. 752, 119 S.E. 87 (1923), the Virginia Supreme Court made the distinction drawn in *Thompson* v. *Missouri, supra*, in interpreting the Virginia Constitution. At the time of the crime, evidence of general character of the accused was not admissible in prohibition cases. Before the trial, the law was changed to permit such evidence to be admitted. Five persons testified that the accused was of a character disposed to make and sell whiskey. The court held that, as opposed to the handwriting exemplars in *Thompson* v. *Missouri, supra*, the character evidence related a fact not previously admissible, thus the conviction was reversed.

In another often-cited, elderly case, *Hart* v. *Alabama*, 40 Ala. 32 (1866), the Alabama Supreme Court held an evidence rule was *ex post facto* law. There the law at the time of the offense required corroboration of the testimony of an accomplice in order for that testimony to be the basis of a conviction of any crime. Prior to the appellants' misdemeanor conviction the requirement was removed as to misdemeanors. The court held that this meant less evidence was required for conviction and, following the broad language of *Calder* v. *Bull, supra*, reversal was required. If we were to follow the Alabama Supreme Court's decision, we might say that because the change in the law before us permitted different testimony from that permitted at the time of the crime it could be said that less other testimony was thus required. Then again, we might say that no less testimony is required to convict but that, pursuant to the change, more testimony is permitted. We find that sort of angel dancing intolerable.

While we could not condone legislation criminalizing an act after its perpetration or retroactively increasing the punishment, we can find no reason to hold that a person who commits a crime has a right to rely on rules of evidence in effect at the time of the crime which govern not the facts which may be proven but the manner in which those facts are ascertained by a witness. Evidence rules must be judged on their own as to whether they are fairly designed to get at the truth. We are not dealing here with any privacy or due process argument. If the evidence admitted in this case was fair on the day of the trial, it was fair on the day the crime was committed, and from the perspective of *ex post facto* legislation the appellant had only the right to expect fair treatment beyond his right not to have the elements of the

crime, or the provable facts, changed. The Arkansas Constitution does not prohibit the evidence admitted in this case.

### 2. Limited cross-examination

Easter had testified he participated in the drug buy because of the deal he made with the police. In cross-examination, the appellant's counsel sought to go into detail with respect to the stolen video cassette recorder. The prosecutor objected on the basis that Easter had admitted the theft and the circumstances of his participation in his direct testimony and that cross-examination on the point would waste time.

The appellant contends he was entitled to let the jury know, for example, the value of the video cassette recorder so that the jury would know the degree of punishment Easter might face if he had failed to testify. The appellant did not make a proffer of what he might have shown by cross-examination. But even had he done so, the trial court did not abuse his discretion by limiting the cross-examination. The basic impeaching point had been admitted by the witness.

> . . . [W]hen the main circumstances from which the bias proceeds have been proven, the trial judge has a discretion to determine how far the details, whether on cross-examination or by other witnesses, may be allowed to be brought out. After all, impeachment is not a central matter, and the trial judge, though he may not deny a reasonable opportunity to prove the bias of the witness, has a discretion to control the extent to which the proof may go. He has the responsibility for seeing that the sideshow does not take over the circus.

E. Cleary, *McCormick's Handbook of the Law of Evidence*, pp. 88-89 (3d ed. 1984). The limits of cross-examination lie within the trial judge's sound discretion, and we will not reverse absent an abuse of that discretion.

Affirmed.