**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Robert Lee STEVENS, Jr.
Defendant–Appellant.**

No. 54173.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 12, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 24, 1988.

Application to Transfer Denied
Oct. 18, 1988.

Henry B. Robertson, St. Louis, for defendant-appellant.

George A. Peach, Circuit Atty., Hal Goldsmith, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

PUDLOWSKI, Judge.

Defendant appeals from his conviction for driving while intoxicated in violation of Section 577.010, RSMo 1986. We affirm.

Officer Charles Marvin of the St. Louis Police Department was on patrol at 3:00 a.m. on February 6, 1987. He saw a 1977 blue Malibu stop momentarily and then proceed through a red light in the 2900 block of South Jefferson. At the next intersection, the driver repeated the same traffic violation. The officer turned on his red lights and pulled the vehicle over to the side of the road. The defendant alighted as did a passenger. Concurrently, a second police officer arrived on the scene. Both officers testified that the defendant's eyes were red, watery and bloodshot; that his speech was slow and slurred; and that his breath had a strong alcohol odor. The defendant was arrested and given the appropriate *Miranda* warnings. He was advised that he had the right to submit to or refuse a breathalyzer test, but that if he refused, the Director of Revenue could revoke his driver's license for one year. Defendant refused to submit to the breathalyzer test but volunteered to take a field sobriety test. In this test, defendant managed to recite the alphabet; however, his speech was slow and slurred. He failed to walk a straight line, maintain his balance on either foot, or to touch his nose with either index finger when his eyes were closed. It was the opinion of both officers that the defendant was intoxicated.

On the rear seat of defendant's vehicle, the officers discovered a bag containing eight unopened cans of cold beer. No empty cans were found in the vehicle.

Defendant presented the testimony of the physician who had treated him since June, 1987. The physician testified that the defendant suffered from pragmatic chronic degenerative joint disease (a type of arthritis) of the knees which would have caused severe pain and difficulty in performing two of the field sobriety tests, standing on one leg and walking a straight line. The physician testified that he had not treated the defendant at the time of or before his arrest nor did he know if the defendant was being treated with prescription drugs at that time. In addition, he testified that defendant's arthritic condition would not have caused his eyes to appear red, watery and bloodshot, nor would it have caused him difficulty in performing the finger-to-nose test. Defendant's physician had never observed the defendant's speech to be slurred.

The jury convicted the defendant, and the court sentenced him as a prior offender to six months imprisonment.

Initially, we will address defendant's second point because much of our later analysis hinges on its resolution. The relevant statute in effect at the time of the defendant's arrest was Section 577.041.1, RSMo 1986, which begins:

If a person under arrest refuses upon the request of the arresting officer to submit to a chemical test, which request shall include the reasons of the officer for requesting the person to submit to a test and which also shall inform the person that his license may be revoked upon

his refusal to take the test, then none shall be given.

After the defendant's arrest but before the date of this trial, the statute was amended to read:

If a person under arrest refuses upon the request of the arresting officer to submit to any test allowed under section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding under section 577.010 or 577.012. The request of the arresting officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of his refusal to take the test may be used against him and that his license may be revoked upon his refusal to take the test.

Section 577.041.1, RSMo Supp.1987 (effective Sept. 28, 1987).

Defendant asserts that the trial court erroneously applied the amended statute rather than the statute that was in effect at the time of the defendant's arrest, thereby, violating the prohibition against ex post facto laws.

 It is appropriate to begin with a brief summary of the law with regard to the ex post facto impact of changes in evidentiary rules. Laws which change the elements or facts *necessary* to establish guilt are substantive in nature and as such are subject to ex post facto prohibition; whereas, mere procedural changes are not subject to such prohibition. *Miller v. Florida*, —— U.S. ——, ——–——, 107 S.Ct. 2446, 2452–53, 96 L.Ed.2d 351 (1987) (emphasis added). Therefore, the question before this court is whether the statutory change, allowing the admission of the evidence of refusal to submit to breathalyzer testing to come in at trial as evidence of guilt, is a procedural or a substantive change in the law. It is not sufficient to say that the change concerns an evidentiary matter and is, therefore, procedural. "The general rule is that any statutory alteration of the legal rules of evidence which would authorize conviction upon less proof, in amount or degree, than was required when the offense was committed

may be obnoxious to the constitutional prohibition upon ex post facto laws." 16A Am.Jur.2d *Constitutional Law* Section 651 (1979). "It is the effect, not the form, of a statute that determines whether it is an ex post facto law, the critical question being whether the law changes the legal consequences of acts completed before its effective date." *State v. Davis*, 645 S.W.2d 160, 162 (Mo.App.1982) (citing *Weaver v. Graham*, 450 U.S. 24, 31, 101 S.Ct. 960, 965, 67 S.Ct. 17 (1981)).

The leading Supreme Court case is *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925). The *Beazell* Court advises, "[I]t is now well settled that statutory changes in the mode of trial or rules of evidence, which do not deprive the accused of a defense and which operate only in a limited and unsubstantial manner to his disadvantage, are not prohibited [by the Constitution]." *Id.* at 170, 46 S.Ct. at 69. Among the supporting examples listed by the Court is *Thompson v. Missouri*, 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898). The *Thompson* opinion held that a statute which changed a rule of evidence after an offense but before the time of trial and allowed the admission of evidence against the accused which was previously inadmissible did not violate the prohibition against ex post facto laws. As in *Thompson*, the statute involved in this case "did nothing more than remove an obstacle arising out of a rule of evidence that withdrew from the consideration of the jury testimony which, in the opinion of the legislature, tended to elucidate the ultimate, essential fact to be established, namely, the guilt of the accused." *Id.* at 387, 18 S.Ct. at 924. "Even though it may work to the disadvantage of a defendant, a procedural change is not *ex post facto.*" *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977).

Later cases from our sister states shed more light on the application of the ex post facto prohibition. The distinction in all the cases seems to be whether the statute in question changed the quantum or amount of evidence required for conviction. Therefore, the repeal of a statute that precluded

conviction of an accused solely on the uncorroborated testimony of an accomplice and the subsequent passage of a statute permitting the uncorroborated testimony of an accomplice to be sufficient evidence upon which to base a conviction violated the constitutional prohibition against ex post facto laws. *State v. Schreuder*, 726 P.2d 1215 (Utah 1986). The reason for this holding is that the change in the law reduced the *amount* of evidence that was required for conviction. In contrast, however, a change in a statute after the alleged crime which allowed the hearsay statements of a child victim of sexual abuse to be admitted against an accused at trial when previously such a statement was inadmissible was not a prohibited ex post facto law because it simply authorized the introduction of additional evidence of guilt. *See, e.g., Cogburn v. State*, 292 Ark. 564, 732 S.W.2d 807 (1987); *Glendening v. State*, 503 So.2d 335 (Fla.Dist.Ct.App.1987); *People v. Koon*, 724 P.2d 1367 (Colo.Ct. App.1986). *See also, Smith v. State*, 291 Ark. 163, 722 S.W.2d 853 (1987) (evidence of intercepted oral communication previously inadmissible did not violate the ex post facto prohibition); *State v. Leonard*, 151 Ariz. 1, 725 P.2d 493 (Ariz.Ct.App.1986) (statute changing foundational requirements for admission of the results of a breath test in a trial on DWI charges is procedural and not an ex post facto violation); *Harper v. State*, 686 S.W.2d 738 (Tex.Ct.App.1985) (statutory amendment creating an exception to confidentiality of patient records in prosecution of a criminal defendant which permitted admission of blood alcohol test results did not constitute ex post facto application of the amended statute); *People v. Seldomridge*, 154 Cal. App.3d 362, 201 Cal.Rptr. 377 (1984) (statute effective after the offense which excluded evidence of polygraph test results was merely change in the type of evidence admissible and would not implicate ex post facto considerations); *Howard v. United States*, 473 A.2d 835, 840 n. 2 (D.C.1984) (change in narcotics statute, incorporating business records exception to hearsay rule, did not lessen the degree of proof necessary for conviction but merely altered the method the government might use to meet its burden; therefore, change was procedural and not prohibited by ex post facto clause); *Commonwealth v. McElhenny*, 329 Pa.Super. 240, 478 A.2d 447 (1984) (previously inadmissible evidence consisting of tapes of police emergency calls which was admitted because of statutory change did not alter the evidence necessary to convict an offender; and, thus, it did not violate ex post facto clause).

Defendant, in the case before us, contends that the change in the evidentiary rule "penalized an act which could not have been used against him when done." Defendant was not penalized in this trial for his refusal to submit to breathalyzer testing; his penalty was assessed for driving under the influence of alcohol. One fact that may have been considered by the jury in determining the defendant's guilt was his refusal to be tested; however, the evidence of refusal was not necessary or conclusive in the jury's determination of guilt, and the change did not affect the amount of evidence required to convict the defendant. Missouri law does not prohibit the retrospective application of a law or rule that deals only with procedure or remedies. *State v. Kummer*, 741 S.W.2d 285, 289 (Mo.App.1987).

Defendant argues that the change at issue affects a substantial right, namely, his right to refuse to submit to breathalyzer testing. While defendant correctly points to his statutory right to refuse testing, he is not constitutionally protected from the adverse consequences of his refusal. The Supreme Court examined this subject in *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). While the South Dakota statute involved in *Neville* allowed for the admissibility of evidence of a refusal to submit to the test procedure, the police officers failed to advise Neville of this possibility.

The *Neville* Court first considered whether the refusal to submit to the test was protected by the fifth amendment's privilege against self-incrimination, holding: "[A] refusal to take a blood-alcohol test, after a police officer has lawfully re-

quested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination." *Id.* at 565, 103 S.Ct. at 923.

The Court in *Neville* further considered a due process claim and held that the admission of evidence of a refusal following the warning that refusal may result in loss of driving privileges for one year "comported with the fundamental fairness required by due process." *Id.* at 566, 103 S.Ct. at 924. The *Neville* Court based its holding on the fact that one's right to refuse a blood-alcohol test is not constitutionally protected as is the right to silence underlying the *Miranda* warnings. *Id.* at 565, 103 S.Ct. at 923.

The amendment of former Section 577.-041, RSMo 1986, initiates a change which is procedural in nature. The application of the amended statute does not violate any of the defendant's constitutional rights; therefore, the trial court did not err.[1]

■ Defendant objected to the prosecution argument that his refusal to take a breathalyzer test was evidence of his guilt. The basis for his objection was that his statutory right to refuse made it fundamentally unfair and, therefore, a violation of due process to use that refusal against him and that the argument amounted to a comment on defendant's silence while under arrest. He relies on *City of St. Joseph v. Johnson*, 539 S.W.2d 784 (Mo.App.1976). This case held that it was error to admit evidence of refusal to submit to breathalyzer testing when applying the former Section 564.444(1), RSMo Supp.1975. Since we have determined that this was not the statute in effect with regard to the issue of admissibility of defendant's refusal to submit to the testing procedure, the case is inapplicable. The procedural amendment found in Section 577.041.1, RSMo Supp. 1987, applied to defendant's trial, which occurred after the amendment's effective date. There was no error in allowing the prosecution to argue the fact that the defendant's refusal to submit to the breathalyzer test was indicative of guilt.

Defendant urges us to find that the trial court erred by refusing Instruction "A," a non–MAI instruction submitted by the defendant. It read:

> Under the law, a defendant has the right to refuse to take a breathalyzer test. No presumption of guilt may be raised, and no inference of any kind may be drawn from the fact that the defendant did not take a breathalyzer test.

The reasons for offering this instruction have been rejected in our discussion of defendant's first two points on appeal. "When a requested instruction is incorrect, refusal to give it is not error." *State v. Garrette*, 699 S.W.2d 468, 510 (Mo.App. 1985). There is, therefore, no need for further consideration of this point on appeal.

Defendant's final point alleges that the trial court erred by refusing to permit the defendant to introduce exculpatory portions of his statements to the police because they were admissible under either the *res gestae* exception or the entire conversation exception to the hearsay rule. In defendant's offer of proof, the police officer revealed that the defendant told him that he had drunk two beers earlier but was not drunk. He had also stated that the beer found on the rear seat of the car belonged to the passenger. These statements constituted self-serving hearsay and, when offered by the defendant, were inadmissible unless they came within a recognized exception to the hearsay rule.

■ Defendant contends that the statements are admissible under the *res gestae* exception; however, the statement must be a spontaneous statement produced by the event itself to come within this exception. *State v. Hook*, 432 S.W.2d 349, 353 (Mo.1968). The defendant made the

---

1. Assuming that the statute had not been amended, our result would have been the same. This court held in a case under the former statute, Section 577.041, RSMo 1986, that although it was error to admit evidence of the defendant's refusal to submit to breathalyzer testing, the error was harmless because the other evidence of guilt was strong. *State v. Long*, 698 S.W.2d 898, 902 (Mo.App.1985). The relevant evidence in the case with regard to intoxication was remarkably similar to the evidence in this case.

statements in question in response to police interrogation and not as a "spontaneous reaction" to the stress of the situation. *See State v. Scott*, 535 S.W.2d 281, 283 (Mo.App.1976). The cases cited by the defendant are factually dissimilar. Defendant's statements are not within the *res gestae* exception.

Defendant also contends that the statements came under the entire conversation exception to the hearsay rule. To come within this exception, the statements that the defendant sought to introduce must be reasonably related to and explanatory of the statements already admitted. *State v. Hodges*, 575 S.W.2d 769, 774 (Mo. App.1978). The statements must tend to explain, contradict, or qualify the portion of the conversation testified to on direct examination. *Id.*

The direct examination statements that were in evidence were the defendant's negative answers to police questions concerning whether he was under treatment by a physician or taking any medication at the time of his arrest. Further statements about the amount of beer the defendant had consumed, ownership of the beer found in the vehicle, and defendant's opinion with regard to his state of intoxication were unrelated to his statements concerning his medical history. They did not tend to explain, contradict, or qualify the statements already in evidence; thus, they were not within the entire conversation exception.

The judgment is affirmed.

STEPHAN and DOWD, JJ., concur.