**STATE of Missouri, Plaintiff–Appellant,**

v.

**John M. COX, Defendant–Respondent.**

**No. 17881.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 6, 1992.

(1991).

Kerry Rowden, Pros. Atty., Donna L. Holden, Asst. Pros. Atty., Tuscumbia, for plaintiff-appellant.

Mark A. Ludwig, Lana R. Woolsey, Carson & Coil, Jefferson City, for defendant-respondent.

SHRUM, Presiding Judge.

The state charged the defendant, John Cox, with involuntary manslaughter, in violation of § 565.024, RSMo 1986. The trial court sustained the defendant's pre-trial motion to suppress evidence that he refused to submit to a blood alcohol test. The state appeals; we affirm.[1]

---

**1.** § 547.200, RSMo 1986, permits the state, through the prosecuting attorney, to appeal "from any order or judgment the substantive effect of which results in ... [s]uppressing evidence...." Rule 30.02 describes the procedure for such interlocutory appeals.

**2.** § 565.024, RSMo 1986, provides:
   1. A person commits the crime of involuntary manslaughter if he:

## FACTS

On October 19, 1990, on U.S. Highway 54 in Miller County, Missouri, a pick-up truck driven by the defendant collided with a passenger car occupied by Shanna Needham. As a result of injuries she sustained in the accident, Ms. Needham died the following day.

The defendant was taken to a hospital for treatment of his injuries. While there, he was arrested by a state trooper on a charge of careless and imprudent driving. After arresting the defendant, the trooper asked him to submit to a blood alcohol test. According to the trooper's report, the defendant "refused the blood sample. He stated he couldn't do the test until he spoke with his attorney." No blood test was performed.

The state charged the defendant with two alternative counts of involuntary manslaughter in violation of § 565.024, RSMo 1986.[2] By Count I, the state charged involuntary manslaughter under subparagraph .1(2) of the statute, alleging that the defendant, "while under the influence of a combination of alcohol and a drug or drugs caused the death of Shanna L. Needham...." In Count II, the state charged involuntary manslaughter under subparagraph .1(1), alleging the defendant recklessly caused Ms. Needham's death in that, along with other actions, he drove after consuming a combination of alcohol and a dizziness-inducing medication.

By a motion in limine, the defendant sought to suppress evidence that he refused to submit to a blood test. By written order, the trial court sustained the motion concerning the defendant's alleged refusal to take the test. The trial court stated as one of the reasons for its decision the lan-

   (1) Recklessly causes the death of another person; or
   (2) While in an intoxicated condition operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause the death of any person.
   2. Involuntary manslaughter is a class C felony.

guage of the chapter 577 "refusal provision," § 577.041.1, RSMo Supp.1987, which provides, in part, "If a person under arrest refuses upon the request of the arresting officer to submit to any test allowed under section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding under section 577.010 or 577.012."

The trial court observed that § 577.041.1 makes a refusal to submit to a blood test (one of the tests allowed under § 577.020) admissible in cases of driving while intoxicated (§ 577.010) and driving with excessive blood alcohol content (§ 577.012), but it does not make the refusal admissible in an involuntary manslaughter case. Because § 577.041.1 does not specifically make a refusal admissible in a manslaughter case, the trial court concluded that evidence of the defendant's refusal was inadmissible.[3]

## DISCUSSION AND DECISION

In Point I the state contends that the trial court's reading of § 577.041.1 is "too narrow" in that the statute "does not preclude evidence of a refusal to be admitted in a proceeding under § 565.024 RSMo 1986, to show evidence of driving while intoxicated." We glean from the argument portion of the state's brief and reply brief two basic reasons to support this point on appeal. (1) The result the state seeks was intended by the Missouri General Assembly, and to conclude otherwise would thwart the intent of the legislature. (2) The state's interpretation of the statute is permitted by the United States Supreme Court opinion, *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).

We consider the *Neville* case first. In *Neville,* the defendant was charged with

driving under the influence of alcohol, a violation of South Dakota Codified Laws Annotated § 32–23–10.1.[4] He refused to submit to a blood alcohol test and sought to suppress evidence of his refusal. The trial court ruled that SDCL 32–23–10.1 was unconstitutional and ordered evidence of the defendant's refusal suppressed. *See State v. Neville,* 312 N.W.2d 723, 724 (S.D.1981). The South Dakota Supreme Court affirmed the trial court's order, holding the statute violated the defendant's federal and state constitutional privileges against self-incrimination. *Id.* at 724–25. The United States Supreme Court granted certiorari, reversed the judgment of the South Dakota Supreme Court, and held that the admission into evidence of the defendant's refusal to submit to the test did not "offend the right against self-incrimination," 103 S.Ct. at 918, and did not violate his due process rights where he was warned his refusal could lead to the loss of driving privileges even though he was not warned his refusal could be used as evidence at trial. 103 S.Ct. at 923–24.

The statute involved in *Neville* is similar to § 577.041.1; it permitted evidence of a person's refusal to submit to a blood alcohol test to be admitted at that person's trial on charges of driving while under the influence of alcohol. Thus the United States Supreme Court in *Neville* answers in the negative a question that is not asked in the case before us: whether the use of § 577.-041.1 to allow into evidence refusal to submit to a blood alcohol test at the trial of one charged with driving while intoxicated offends the United States Constitution. Missouri courts already have considered this question. *See, e.g., State v. Spain,* 759 S.W.2d 871, 875 (Mo.App.1988), and *State v. Long,* 698 S.W.2d 898, 902 (Mo. App.1985).

---

**3.** As an additional reason for its decision, the trial court found that the defendant "was denied reasonable efforts to contact an attorney after requesting one." In Point II the state alleges that finding is erroneous. We do not address Point II because our resolution of Point I is adverse to the state.

**4.** The statute in question, SDCL 32–23–10.1, provided:

If a person refuses to submit to chemical analysis of his blood, urine, breath or other bodily substance, as provided in § 32–23–10, and that person subsequently stands trial for driving while under the influence of alcohol or drugs, as provided in § 32–23–1, such refusal may be admissible into evidence at trial.

■ Here, however, discussion of *Neville* is premature. The question we face is whether § 577.041.1 permits evidence of the defendant's refusal of a blood alcohol test to be used at trial in a manslaughter case. We conclude it does not.[5]

■ Our task is one of statutory construction. In construing statutes, our primary responsibility is to ascertain the intent of the legislature. *Community Fed. Sav. & Loan Ass'n v. Director of Rev.*, 752 S.W.2d 794, 798 (Mo.banc), *cert. denied* 488 U.S. 893, 109 S.Ct. 231, 102 L.Ed.2d 221 (1988). Rules or canons of construction exist to assist us in our task of ascertaining legislative intent. *McCallister v. McCallister*, 809 S.W.2d 423, 427 (Mo.App. 1991).

■ We note certain canons of construction that are helpful in our consideration of the question before us. In construing a statute to determine legislative intent, a court presumes that the legislature was aware of existing declarations of law and the construction of existing statutes when it enacted a law on the same subject. *Barnhart v. McNeill*, 775 S.W.2d 259, 260 (Mo.App.1989). If possible, a statute's intent should first be ascertained from its plain language. *State v. Davis*, 675 S.W.2d 410, 415 (Mo.App.1984). The express mention of one thing in a statute implies the exclusion of another. *State v. Setter*, 721 S.W.2d 11, 15 (Mo.App.1986).

Our consideration of the state of the law at the time the applicable version of § 577.041.1 was enacted must begin with the General Assembly's enactment of Senate Bill 45, 1965 Mo. Laws 670–72. By § 1 of S.B. 45, the General Assembly established Missouri's "implied consent" law.[6] Section 3 of S.B. 45 concerned the admissibility into evidence of the results of chemical analysis. Senate Bill 45 also permitted a person to refuse to submit to a chemical test, and the bill provided certain consequences of such refusal.[7]

The original form of Missouri's "refusal provision," § 564.444.1, set out *supra* note 7, was construed by the court in *City of St. Joseph.* In holding that in a prosecution for driving while intoxicated it was error to admit evidence of the defendant's refusal to submit to a breathalyzer test, the western district stated:

The choice allowed a motorist by the Missouri statute to refuse or submit to the test is encumbered only by the possibility of revocation of license, but no

---

5. In its point relied on, the state misconceives the issue with its apparent assumption that the evidence of refusal is admissible unless otherwise precluded by § 577.041.1. The question is whether the statute permits the use of otherwise inadmissible evidence.

6. The term *"implied consent" law* has been described as a "convenient misnomer," *Gooch v. Spradling*, 523 S.W.2d 861, 865 (Mo.App.1975), a "sobriquet" that "misleads as to [the] legal effect" of the statute. *City of St. Joseph v. Johnson*, 539 S.W.2d 784, 786 (Mo.App.1976).

7. Section 1 of S.B. 45 provided in pertinent part:
   Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to, subject to the provisions of this act, a chemical test of his breath for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while intoxicated.
   Section 1 of S.B. 45 was originally codified as § 564.441.1. The current version of the "implied consent" law is § 577.020, RSMo 1986.

Section 3 of S.B. 45 provided in pertinent part:
   Upon the trial of any criminal action or violations of county or municipal ordinances arising out of acts alleged to have been committed by any person while driving a motor vehicle while intoxicated, the amount of alcohol in the person's blood at the time of the act alleged as shown by chemical analysis of the person's blood, breath, saliva or urine is admissible in evidence.
Section 3 of S.B. 45 was originally codified at § 564.442.1. The current version is § 577.037.1, RSMo Cum.Supp.1988.

Section 4, subsection 1 of S.B. 45 provided in pertinent part:
   If a person under arrest refuses upon the request of the arresting officer to submit to a chemical test, which request shall include the reasons of the officer for requesting the person to submit to a test and which also shall inform the person that his license may be revoked upon his refusal to take the test, then none shall be given.
Section 4, subsection 1 of S.B. 45 was originally codified as § 564.444.1. The current version is § 577.041.1, RSMo Supp.1987.

other liability. The statute imposes no other consequence. The admissibility of the refusal as evidence of intoxication in a collateral criminal proceeding, therefore, depends upon whether the probative value of such evidence outweighs its prejudicial effect.... We are persuaded the more rational and acceptable view is that the probative value of refusal is insufficient to provide an independent basis for admissibility.

539 S.W.2d at 787.

The "refusal" provision applicable to the case before us, § 577.041.1, RSMo Supp. 1987, differs from the version under consideration in *City of St. Joseph* in two significant aspects: the 1987 version specifies that "evidence of the refusal shall be admissible in a proceeding under section 577.-010 or 577.012," and, to the long-standing requirement that the officer inform the person that his license may be revoked if he refuses the test, it adds the requirement that the officer inform the person that "evidence of his refusal to take the test may be used against him." [8]

Thus we must determine the meaning of the two additional consequences imposed by the amended statute. For guidance, we look to *Setter* in which a task of the court was to determine the legislature's intent in enacting § 577.039, RSMo 1986, a statutory provision which, like § 577.041.1, contains a specific reference to §§ 577.010 and 577.-012. Section 577.039 provides:

An arrest without a warrant by a law enforcement officer, including a uniformed member of the state highway patrol, for a violation of section 577.010 or 577.012 is lawful whenever the arresting officer has reasonable grounds to believe that the person to be arrested has violated the section, whether or not the violation occurred in the presence of the arresting officer; provided, however,

that any such arrest without warrant must be made within one and one-half hours after such claimed violation occurred.

The court in *Setter* noted it was the state's position on appeal that "there is no ambiguity within the language of § 577.-039, and thus it plainly applies only to offenses prescribed by § 577.010 (driving while intoxicated) and § 577.012 (driving with excessive blood alcohol content)." 721 S.W.2d at 13. The court agreed with the state and held that § 577.039 did not apply to an arrest for involuntary manslaughter because the statute specifically stated that it applied only to charges under § 577.010 and § 577.012. The court stated:

It is evident that the General Assembly, in its enactment of § 577.039, intended that warrantless arrests under this section apply only to violations of § 577.010 or § 577.012 and therefore, the General Assembly had in mind specific situations and did not intend that warrantless arrests and the time limitation of one and one-half hours would apply to all warrantless arrests of all other types of offenses. Under our rules of statutory construction, "the express mention of one thing implies the exclusion of another."

721 S.W.2d at 15 (citations omitted).

We believe the *Setter* determination of legislative intent is equally applicable here. We conclude the General Assembly, in its 1987 revision of § 577.041.1, intended, by the express mention of §§ 577.010 and 577.012, that § 577.041.1 apply only to proceedings brought under those two sections and to no others. The added requirement that the officer inform a person under arrest that "evidence of his refusal to take the test may be used against him" serves to advise the person that his refusal will have consequences beyond administrative

---

8. Section 577.041, RSMo Supp.1987, provides in pertinent part:

1. If a person under arrest refuses upon the request of the arresting officer to submit to any test allowed under section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding under section 577.010 or 577.012. The re-

quest of the arresting officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of his refusal to take the test may be used against him and that his license may be revoked upon his refusal to take the test.

revocation, namely, in an action under § 577.010 or § 577.012.

The holding of *City of St. Joseph* that, absent statutory authorization, evidence of a motorist's refusal to submit to a blood alcohol test is not admissible in a collateral criminal proceeding, maintains its vitality.[9] Upon examination of the plain language of § 577.041.1, RSMo 1987, and in light of the construction of virtually identical language of limitation in *Setter*, we conclude the statute does not authorize evidence of refusal in any collateral criminal proceeding except one brought under § 577.010 or § 577.012.

Despite the plain language of § 577.-041.1, the state argues that because the elements of involuntary manslaughter, as defined in § 565.024.1(2), are driving while intoxicated (§ 577.010),[10] combined with criminal negligence, causation, and death,[11] then evidence of the defendant's refusal to submit to a blood test is admissible in a manslaughter case because it would be admissible had he been charged with driving while intoxicated.[12]

While the state's argument has a certain logical appeal, we must not countermand the clear language of the statute and the state of the law at the time of its amendment. When, in 1987, the legislature amended § 577.041.1 to allow introduction of evidence of refusal in actions brought under §§ 577.010 and 577.012, it was not venturing into uncharted waters. The *City of St. Joseph* and *Setter* cases had been decided and the issue had been the subject of numerous appellate court cases throughout the country.[13] Since 1963 drunken driving frequently has been a subject of legislative action in Missouri.[14] The General Assembly's ongoing attention to the subject confirms the presumption that the legislature was aware of the status of the law at the time it amended § 577.041.1 in 1987.

■ Appellate courts must be guided by what the legislature said, not by what the courts think it might have meant to say. *White v. American Republic Ins. Co.*, 799 S.W.2d 183, 189 (Mo.App.1990). We have no business foraging among the rules of judicial construction to try to create an ambiguity where none exists. *Wells v. Bryant*, 782 S.W.2d 721, 723 (Mo.App. 1989). Although one might question the

9. Appellate courts of this state have had several opportunities to consider the holding in *City of St. Joseph*, all in the context of driving while intoxicated cases. In light of the 1987 amendment of § 577.041.1, the *Barnhart* court described the *City of St. Joseph* decision as "irrelevant" in criminal prosecutions under §§ 577.010 and 577.012. 775 S.W.2d at 261. The court in *State v. Stevens*, 757 S.W.2d 229 (Mo.App.1988), concluded the use of evidence of the defendant's refusal was permitted under the 1987 version of the statute. Other cases pre-date the 1987 amendment of § 577.041.1. *See State v. Brown*, 749 S.W.2d 448 (Mo.App.1988) (defendant's challenge to admissibility of evidence of his refusal not preserved for appellate review), and *Spain*, 759 S.W.2d 871, *Long*, 698 S.W.2d 898, and *State v. Davison*, 668 S.W.2d 252 (Mo.App. 1984) (admission of evidence of refusal was harmless error). The concept of harmless error is irrelevant where, as here, the matter is before the court as an interlocutory appeal. For an opinion that predates *City of St. Joseph* and holds the same view, see *State v. Walden*, 490 S.W.2d 391, 393[4] (Mo.App.1973).

10. The term *intoxicated condition* as it is used in § 565.024.1(2) and § 577.010.1 is identically defined in chapters 565 and 577 as "under the influence of alcohol, a controlled substance, or drug, or any combination thereof." § 565.-002(4); § 577.001.2.

11. The elements which the state must prove in a § 565.024.1(2) involuntary manslaughter case are (1) the defendant drove in an intoxicated state, (2) acted with criminal negligence, and, (3) in so doing, caused another's death. *State v. Hernandez*, 815 S.W.2d 67, 70[1] (Mo.App.1991).

12. The state develops no argument that evidence of the defendant's refusal to submit to the blood test would be admissible if he were charged solely with involuntary manslaughter as defined in § 565.024.1(1).

13. A collection of cases in accord with and in conflict with *City of St. Joseph* may be found in Jay M. Zitter, Annotation, *Admissibility in Criminal Case of Evidence that Accused Refused to Take Test of Intoxication*, 26 A.L.R.4th 1112 (1983).

14. *See, e.g.*, 1963 Mo.Laws 686–87 (S.B. 78); 1967 Mo.Laws 410–11 (S.B. 37); 1975 Mo.Laws 312–13 (S.B. 32); 1977 Mo.Laws 658, 663 and 716–17 (S.B. 60); 1982 Mo.Laws 682, 683 and 686–89 (S.B. 513); 1983 Mo.Laws 922, 923 and 927 (S.B. 276); 1987 Mo.Laws 907, 908 and 912 (S.B. 230); 1991 Mo.Laws 702, 703 and 714–716 (S.B. 125 and 341).

wisdom of a statute that permits admission of evidence of a refusal to submit to a blood alcohol test in a driving while intoxicated case or a driving with excessive blood alcohol case, while not permitting it to be used in a manslaughter case, amending the statute is a matter for the legislature and not the court.

We affirm the trial court order.

FLANIGAN, C.J., and MAUS, J., concur.