**STATE of Missouri, Respondent,**

v.

**Stephen J. DVORAK, Appellant.**

**No. ED 91727.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 30, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 18, 2009.

Application for Transfer Denied
Oct. 6, 2009.

Stephen B. Evans, St. Louis, MO, for appellant.

Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Stephen J. Dvorak ("Defendant") appeals from the judgment of the Circuit Court of St. Louis County, following a jury trial, convicting him of possessing a loaded firearm while intoxicated in violation of Mo.Rev.Stat. § 571.030.1(5). Defendant claims that the trial court erred in: (1) admitting evidence that he refused to submit to a breathalyzer test because, (a) such evidence was inadmissible under Mo.Rev. Stat. § 577.041 and, (b) the admission violated his right to due process under the Fourteenth Amendment of the United States Constitution; (2) refusing to grant his motion for mistrial based on the State's comments during closing argument that he was "dangerous" and a "vigilante"; and (3) denying his motion for judgment of acquittal for insufficient evidence of intoxication. We affirm.

### Background

Viewed in the light most favorable to the verdict, the evidence at trial revealed the following relevant facts:

Around 10:15 pm on August 7, 2006, Detective James Taschner responded to a disturbance call, and, upon arriving at the scene, found Defendant, a fifty-year-old

man, sitting on the ground wearing only a pair of shorts. As Detective Taschner approached, Defendant attempted to stand up, but was unable to do so. Detective Taschner asked Defendant if he needed help. Defendant responded that he had been drinking that day. Detective Taschner then helped Defendant stand up, however Defendant continued to sway back and forth. Detective Taschner smelled an odor of alcohol on Defendant.

After another police officer arrived, Detective Taschner asked Defendant if he had any weapons, and Defendant replied that he had a handgun tucked in his waistband. Detective Taschner removed a fully loaded Smith & Wesson 9mm semiautomatic handgun from Defendant's shorts. Defendant told Detective Taschner that he had the gun because, earlier that day, he had been cut off by a car while driving, and he was looking for the occupants of the car who he believed lived in the area and were selling drugs. Because Detective Taschner believed that Defendant was intoxicated and angry about the earlier confrontation, he arrested and handcuffed Defendant. Defendant continued to have difficulty standing, and the officers placed Defendant on the ground. After a short discussion, the officers decided to transport Defendant to the police station for processing. The officers escorted Defendant to the police car to prevent him from falling.

At the police station, Detective Taschner asked Defendant if he would take a breathalyzer test, and Defendant refused. During the booking process, Defendant struggled to stand up and had to lean against the counter to stay upright. After Detective Taschner finished booking Defendant, Defendant was then placed in a holding cell.

After two hours in the holding cell, Defendant began to complain of chest pains. Detective Taschner called the paramedics, who arrived shortly thereafter to examine Defendant. After taking his vital signs, which appeared normal, the paramedics led Defendant outside to take him to a hospital. Once outside the police station, Defendant told one of the paramedics, "I just needed you guys to get me free," and walked away. A police officer caught up to Defendant and placed him back in custody in a holding cell until he was released the following morning.

Ultimately, Defendant was charged with unlawfully possessing a firearm while intoxicated. Prior to his trial, Defendant moved *in limine* to bar the admission of evidence that he had refused to submit to the breathalyzer test at the police station. The trial court sustained the motion on the grounds that applicable case law provided that such evidence was inadmissible under Section 577.041.

At trial, the State called Detective Taschner to testify about the events surrounding Defendant's arrest. On direct examination, Detective Taschner testified about Defendant's inability to stand up and keep his balance, and that it was his opinion that Defendant was "extremely intoxicated that night." During cross-examination, Detective Taschner admitted that several important facts regarding Defendant's intoxication, including his testimony that Defendant had to be escorted to the police car, were not included in his police report. Additionally, Detective Taschner admitted that while he normally uses field sobriety tests to determine a suspect's degree of intoxication, he did not administer any of these tests to Defendant.

Following cross-examination of Detective Taschner, the prosecutor argued to the trial court that because defense counsel asked Detective Taschner about his failure to administer field sobriety tests, the defense had opened the door for the

State to question Detective Taschner about his request for Defendant to take a breathalyzer test. Despite its prior ruling on Defendant's motion *in limine,* the trial court agreed and permitted the prosecutor to elicit testimony from Detective Taschner regarding his request and Defendant's refusal to submit to a breathalyzer test.

After the State rested, Defendant took the stand and testified that he was not intoxicated, but that the only alcohol he drank that day was two beers he had at dinner. In contrast to the testimony given by Detective Taschner, Defendant testified that he had no problems standing or talking to the detective. Defendant also testified that his chest pains were caused by bad indigestion from the Kentucky Fried Chicken he had for dinner and that he did not tell the paramedics that he needed them to get free. On cross-examination, the prosecutor asked Defendant why he refused the breathalyzer test since Defendant claimed he was sober and the test would have vindicated him. Defendant answered that, based on his observation of the officers "fooling" with the breathalyzer, he was concerned that they "didn't know how to use the machine. . . ."

In his testimony, Defendant also elaborated on why he was outside only in his shorts with a handgun on the night in question. He stated that he thought he heard a woman's voice and was concerned that someone was breaking into his neighbor's home. Defendant said that after putting on shorts and grabbing his handgun, he went outside and saw the car that had cut him off earlier. Near the car, he saw two white kids, one of whom appeared to be selling drugs. Defendant claimed that he walked towards the car, took his phone out of its pouch, and told them to go home or he would call the police. Defendant testified that the kids left immediately and that Detective Taschner subsequently stopped him as he was walking back to his house.

Defendant also testified to his good character. Specifically, he stated that he had never been arrested before, had been a gun owner for the past thirty years, and had received the citizen citation award and the medal of valor from the St. Louis County police for his assistance in reporting a crime several years ago.

During closing argument, the prosecutor argued that the only disputed issue in the case was whether Defendant was intoxicated. As proof of Defendant's intoxication, the prosecutor reiterated the police officer testimony of Defendant's difficulty walking and standing, the "little game" Defendant played with the paramedics, as well as Defendant's refusal to submit to the breathalyzer test. With respect to the breathalyzer test, the prosecutor argued that Defendant has "cop friends" and "[h]e knows what a breathalyzer can do." Finally, when arguing that the jury should believe the police officers' testimony over Defendant's, the prosecutor argued that "[the officers'] opinion was [that Defendant] was intoxicated. He couldn't stand. He was swaying. He needed things to lean on. He refused to blow."

Additionally, the prosecutor suggested during closing argument that Defendant, who was searching for suspected drug dealers with a loaded gun while intoxicated, was a "dangerous" person and a "vigilante". Defense counsel objected to the prosecutor's line of argument, and the trial court sustained the objection. However, the trial court denied defense counsel's subsequent request for a mistrial.

Following closing argument, the jury found Defendant guilty, and pursuant to the jury's recommendation, the trial court assessed Defendant a fine of five thousand

dollars in lieu of incarceration. Defendant appeals.

### Discussion

*A. Admissibility of Evidence of Defendant's Refusal*

*1. Applicability of Section 577.041*

■ In his first point, Defendant claims that the trial court erred in admitting evidence that he refused to submit to a breathalyzer test because such evidence was inadmissible under Section 577.041.1. Section 577.041.1 provides in part:

> If a person under arrest ... refuses upon the request of the officer to submit to any test allowed pursuant to section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding pursuant to section 565.024 (involuntary manslaughter), 565.060 (assault in the second degree), or 565.082, RSMo (assault of a law enforcement officer in the second degree), or section 577.010 (driving while intoxicated) or 577.012 (driving with excessive blood content).

Mo.Rev.Stat. § 577.041.1 (Cum.Supp.2005) (parentheticals added).

**1.** Sections 577.020 through 577.041 comprise Missouri's "implied consent law." *See Guhr v. Dir. of Revenue*, 228 S.W.3d 581, 583–84 (Mo. banc 2007).

**2.** Specifically, the six circumstances include: (1) If the person is arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition; or (2) If the person is under the age of twenty-one, has been stopped by a law enforcement officer, and the law enforcement officer has reasonable grounds to believe that such person was driving a motor vehicle with a blood alcohol content of two-hundredths of one percent or more by weight; or

As an initial matter, we consider whether Section 577.041.1 applies to the evidence of Defendant's refusal of a breathalyzer test given the circumstances of this case. Section 577.041.1, by its express language, only applies to evidence of a person's refusal "to submit to any test allowed *pursuant to section 577.020, ...*" (emphasis added). Section 577.020 provides in pertinent part:

> *Any person who operates a motor vehicle* upon the public highways of this state shall be deemed to have given consent to, subject to the provisions of sections 577.019 to 577.041, a chemical test or tests of the person's breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of the person's blood pursuant to the following circumstances:

Mo.Rev.Stat. § 577.020.1 (Cum.Supp.2006) (emphasis added).[1] The statute lists six specific circumstances, all of which involve instances where an officer offers a drug or alcohol test to a person who is either suspected of driving a motor vehicle under the influence of drugs or alcohol, or was operating a motor vehicle involved in a collision resulting in a fatality or serious physical injury.[2]

(3) If the person is under the age of twenty-one, has been stopped by a law enforcement officer, and the law enforcement officer has reasonable grounds to believe that such person has committed a violation of the traffic laws of the state, or any political subdivision of the state, and such officer has reasonable grounds to believe, after making such stop, that such person has a blood alcohol content of two-hundredths of one percent or greater;
(4) If the person is under the age of twenty-one, has been stopped at a sobriety checkpoint or roadblock and the law enforcement officer has reasonable grounds to believe that such person has a blood alcohol content of two-hundredths of one percent or greater;
(5) If the person, while operating a motor vehicle, has been involved in a motor vehi-

By its express language, Section 577.020 applies to circumstances where a police officer offers a "chemical test or test[ ] of the person's breath, blood, saliva or urine" to a suspect who has impliedly consented to the test by "operat[ing] a motor vehicle upon the public highways of this state", and where the test is offered pursuant to one of the sets of circumstances described in Section 577.020.1(1)–(6). Because Defendant was not arrested in connection with his unlawful operation of a motor vehicle within the circumstances defined by Section 577.020, the breathalyzer test offered to him did not fall within Section 577.041.1's reference to "any test allowed pursuant to section 577.020". Consequently, Section 577.041.1 does not govern the admissibility of evidence of Defendant's refusal in this case.

In support of his argument to the contrary, Defendant relies primarily on *State v. Cox*, 836 S.W.2d 43 (Mo.App. S.D.1992). In construing the language of Section 577.041.1 (Supp.1987), the court in *Cox* concluded that Section 577.041.1 "does not authorize evidence of refusal in any collateral criminal proceeding except one brought under [one of the statutory sections expressly mentioned in the statute]." *Id.* at 48. Because the defendant in *Cox* was charged with involuntary manslaughter under Section 565.024, which was not an offense listed in Section 577.041.1 at that time, the court affirmed the trial court's decision to suppress evidence of the defendant's refusal to submit to a blood-alcohol test. *Id.* at 47–49. Relying on

*Cox*, Defendant contends that because he was charged with unlawful use of a weapon under Section 571.030.1, which is not an offense expressly mentioned in Section 577.041.1, evidence of his refusal to submit to a breathalyzer test was not admissible in this case.

Defendant, however, fails to recognize that Section 577.041.1 only governs the admissibility of a specific type of evidence, i.e., evidence of a person who operates a motor vehicle's refusal to submit to "any test allowed pursuant to section 577.020". Unlike the instant case, Section 577.041.1 properly governed the evidence in *Cox* because the blood-alcohol test was offered to the *Cox* defendant after he operated a motor vehicle involved in a collision resulting in a fatality, which constituted a "test allowed pursuant to section 577.020". By contrast, Defendant was not operating a motor vehicle and therefore evidence of his refusal did not fall within the category of evidence governed by Section 577.041.1. Thus, *Cox*'s construction of Section 577.041.1 is inapplicable to this case. Point denied.

### 2. Defendant's Due Process Rights

 In his second point, Defendant claims that evidence of his refusal of the breathalyzer test violated his due process rights under the Fourteenth Amendment because he refused to submit to the breathalyzer test after being read his *Miranda* warnings, and therefore the admission of his refusal constituted an impermis-

---

cle collision which resulted in a fatality or a readily apparent serious physical injury as defined in section 565.002, RSMo, or has been arrested as evidenced by the issuance of a uniform traffic ticket for the violation of any state law or county or municipal ordinance with the exception of equipment violations contained in chapter 306, RSMo, or similar provisions contained in county or municipal ordinances; or

(6) If the person, while operating a motor vehicle, has been involved in a motor vehicle collision which resulted in a fatality or serious physical injury as defined in section 565.002, RSMo.

Mo.Rev.Stat. § 577.020.1(1)–(6) (Cum.Supp. 2006).

sible use of his post-*Miranda* silence.[3] Defendant also complains that the evidence of his refusal "enabled the Prosecutor to argue that this was evidence of [his] intoxication which amounted to the prosecution using his post-Miranda silence and post-Miranda requests to speak to an attorney as evidence of guilt."

As Defendant notes, in *Doyle v. Ohio*, the United States Supreme Court held that the Due Process Clause prohibits the State from using a defendant's silence after receiving *Miranda* warnings for impeachment purposes at trial. 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). The Court reasoned that because *Miranda* warnings implicitly assure a defendant that his silence will carry no penalty, the subsequent use of the defendant's post-*Miranda* silence for impeachment purposes is "fundamentally unfair and a deprivation of due process[.]" *Id.* at 618, 96 S.Ct. 2240.[4] In this context, the Supreme Court has also held that post-*Miranda* "silence" includes not only a defendant's refusal to speak, but also his request for an attorney. *Wainwright v. Greenfield,* 474 U.S. 284, 295 n. 13, 106 S.Ct. 634, 640, 88 L.Ed.2d 623 (1986).

In this case, Detective Taschner read Defendant his *Miranda* warnings at the police station and then asked him to submit to a breathalyzer test. Defendant replied that he would not take any tests and wanted to talk to a lawyer. When the

State sought to question Detective Taschner about his attempt to administer a breathalyzer test, the trial court cautioned the prosecutor not to ask about Defendant's post-*Miranda* silence or his request for an attorney. In accordance with these instructions, the prosecutor did not elicit testimony or comment in closing argument that Defendant chose to remain silent after receiving his *Miranda* warnings or that he refused to submit to the breathalyzer test until he spoke to a lawyer. *Cf. State v. Wessel,* 993 S.W.2d 573, 576 (Mo.App. E.D. 1999) (holding that the prosecutor's closing argument, which expressly asserted that the defendant, after receiving his *Miranda* warnings, refused to submit to a breath test until he spoke to an attorney, was reversible error because the "argument squarely and unequivocally invited the jury to infer that Defendant was guilty because he sought to speak to an attorney.").

Even though Defendant's post-*Miranda* silence and request for an attorney were not used as evidence against him, Defendant claims that under *Doyle,* the State was also precluded from using his refusal to submit to the breathalyzer test against him. Defendant's reliance on *Doyle,* however, is misplaced. In *South Dakota v. Neville,* the United States Supreme Court concluded that the use of a defendant's refusal to submit to a blood-alcohol test in the prosecution of an alcohol-related offense did not violate the defendant's right

---

**3.** Defendant states in his brief that the admission of his refusal violated his "constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution." However, in the remainder of his brief, Defendant does not substantively argue, or even refer to, a violation of his Fifth Amendment rights. We do not decide issues not developed on appeal. *See Firestone v. VanHolt,* 186 S.W.3d 319, 324 (Mo.App. W.D.2005). Therefore, we consider only whether the admission of evidence of Defendant's refusal

infringed upon his due process rights under the Fourteenth Amendment.

**4.** While *Doyle* only discusses the use of a defendant's silence for impeachment purposes, Missouri courts have made clear that the State may not use "a defendant's post-arrest post-*Miranda* silence 'either *as affirmative proof of a defendant's guilt* or to impeach his testimony[.]' " *State v. Anderson,* 79 S.W.3d 420, 441 (Mo. banc 2002) (quoting *State v. Howell,* 838 S.W.2d 158, 161 (Mo. App. S.D.1992)) (emphasis added).

to due process. 459 U.S. 553, 564–66 103 S.Ct. 916, 923–24, 74 L.Ed.2d 748 (1983). In that case, the defendant was arrested for driving while intoxicated, and, after reading his *Miranda* warnings, the arresting officers asked the defendant to submit to a blood-alcohol test. *Id.* at 555, 103 S.Ct. 916. The officers warned the defendant that his refusal could result in the revocation of his driver's license, but did not advise him that the fact of his refusal could be used as evidence against him at trial. *Id.* Before the U.S. Supreme Court, the defendant relied on *Doyle* in support of his argument that the State's use of his refusal at trial violated his due process rights. *Id.* at 564–65, 103 S.Ct. 916. Rejecting the defendant's claim, the Court explained that a defendant's refusal of a blood-alcohol test is not constitutionally protected as is the right to silence underlying the *Miranda* warnings. *Id.* at 565, 103 S.Ct. 916; *see also State v. Stevens,* 757 S.W.2d 229, 233 (Mo.App. E.D.1988). Additionally, the Court concluded that, unlike the circumstances in *Doyle,* the use of the defendant's refusal was not fundamentally unfair constituting a violation of due process because the failure to warn the defendant of the consequences of his refusal "was not the sort of implicit promise to forego use of evidence that would unfairly 'trick' [the defendant] if the evidence were later offered against him at trial." *Id.* at 566, 103 S.Ct. 916.

Under *Neville,* we find that the admission of Defendant's refusal to submit to a breathalyzer test did not infringe upon his federal due process rights. As mentioned, *Doyle* is inapplicable because the evidence admitted in the case only revealed the fact of Defendant's refusal, and not his post-*Miranda* silence. *See also Deering v. Brown,* 839 F.2d 539, 544 (9th Cir.1988); *Cox v. People,* 735 P.2d 153, 159 (Colo. 1987) (distinguishing between evidence of "silence" and evidence of "refusal"). Im-portantly, even though Defendant was not expressly warned that his refusal could be used against him at trial, there is no evidence that Defendant was implicitly promised or unfairly tricked into believing that evidence of his refusal would not later be used against him.

■ Furthermore, even if evidence of a defendant's refusal of a breathalyzer test is improperly admitted, such error is harmless where other evidence of guilt is strong. *State v. Stevens,* 757 S.W.2d 229, 233 n. 1 (Mo.App. E.D.1988) (citing *State v. Long,* 698 S.W.2d 898, 902 (Mo.App. E.D. 1985)). Here, evidence of Defendant's intoxication, aside from his refusal of a breathalyzer, included evidence that Defendant had trouble standing and walking, had an odor of alcohol on his breath, and admitted to drinking. Given the evidence in this case, even if the admission of Defendant's refusal was improper, the error was harmless. Point denied.

### 3. *"Curative Admissibility Doctrine"*

■ The State contends, in response to both Points I and II, that regardless of Defendant's statutory and constitutional arguments, evidence of Defendant's refusal to submit to a breathalyzer was independently admissible under the "curative admissibility doctrine." Under this doctrine, "'where the defendant has injected an issue into the case, the state may be allowed to admit otherwise inadmissible evidence in order to explain or counteract a negative inference raised by the issue defendant injects.'" *State v. Weaver,* 912 S.W.2d 499, 510 (Mo. banc 1995) (quoting *State v. Lingar,* 726 S.W.2d 728, 734–35 (Mo. banc 1987), *cert. denied* 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987)) (*abrogated on other grounds by State v. Taylor,* 238 S.W.3d 145 (Mo. banc 2007)). The State argues that defense counsel attacked

the credibility of Detective Taschner's observations and conclusion that Defendant was intoxicated by cross-examining the detective regarding his failure to conduct a field sobriety test. Therefore, according to the State, evidence of Detective Taschner's attempt to administer a breathalyzer test was admissible under the curative admissibility doctrine to rebut the negative inferences raised by the testimony elicited by defense counsel.

▉ The State's discussion of the curative admissibility doctrine, however, fails to account for an important element of the doctrine. As described by our Supreme Court, "[t]he 'curative admissibility doctrine' applies after one party introduces inadmissible evidence." *State v. Middleton*, 998 S.W.2d 520, 528 (Mo. banc 1999) (citing *State v. Shurn*, 866 S.W.2d 447, 458 (Mo. banc 1993)), *cert. denied*, 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). Consequently, "[a] party may not [ ] introduce inadmissible evidence to rebut inferences raised by the introduction of admissible evidence during cross-examination." *Middleton*, 998 S.W.2d at 528. Because the State does not argue, and nothing in the record indicates, that defense counsel first elicited inadmissible testimony from Detective Taschner on cross-examination, the "curative admissibility doctrine" was not available to the State in this case. However, because the admission of Defendant's refusal was neither precluded by Section 577.041 nor violative of Defendant's Fourteenth Amendment right to due process, the trial court did not err in admitting the challenged evidence.

*B. Prosecutor's Comments During Closing Argument*

▉ In his third point, Defendant contends that the trial court erred in denying his motion for a mistrial because the prosecutor suggested during closing argument that Defendant was a "dangerous" person and a "vigilante" with a weapon. Defendant asserts that these comments were improper in that they encouraged the jury to convict him simply because he might be dangerous, rather than for committing the crime charged. *See, e.g., State v. Gonzalez*, 899 S.W.2d 936, 937 (Mo.App. W.D. 1995).

▉ By sustaining Defendant's objection, the trial court determined that the prosecutor's comments were improper, and therefore we need only consider whether the trial court erred in failing to grant a mistrial. "Mistrial is a drastic remedy to be used only in the most extraordinary circumstances when there is a grievous error which cannot otherwise be remedied." *State v. Davis*, 122 S.W.3d 690, 692 (Mo.App. E.D.2003) (quoting *State v. Sanders*, 903 S.W.2d 234, 238 (Mo.App. E.D.1995)). When improper comments are made during closing argument, we review a trial court's refusal to grant a mistrial for an abuse of discretion because the trial court is in a superior position to determine the prejudicial effect of the challenged comments and which remedial measures, if any, are necessary. *Id.* at 692–93. "Reversal for improper argument is appropriate only if the defendant proves the comment had a decisive effect on the jury's decision." *State v. Norman*, 243 S.W.3d 466, 473 (Mo.App. S.D.2007). When determining whether an improper argument warrants a new trial, we consider the prejudicial effect of the argument in the context of the entire record. *Id.*

In this case, Defendant fails to demonstrate how the prosecutor's comments had a "decisive effect" on the jury's verdict. Considering the entirety of the State's closing argument, the comments referring to Defendant as "dangerous" and a "vigilante" arose during the prosecutor's recounting of the facts of the case. Aside

from these limited references, the bulk of the prosecutor's argument focused on the ultimate issue of whether Defendant was intoxicated, where the prosecutor argued for the credibility of the State's police witnesses over Defendant's testimony. Additionally, it is important to note that because the trial court sustained Defendant's objections, the prosecutor's comments did not carry the "imprimatur of the trial court", reducing the potential for prejudice. *See State v. Reed*, 629 S.W.2d 424, 429 (Mo.App. W.D.1981). Given this record, we are not convinced that the prosecutor's comments had a decisive effect on the jury's decision, and, as such, the trial court acted within its discretion in denying Defendant's request for a mistrial. Point denied.

## C. Sufficiency of Evidence of Defendant's Intoxication

In his fourth point, Defendant claims that the trial court erred in denying his motion for acquittal and entering judgment and sentencing him for unlawful use of a weapon because the evidence was insufficient for a reasonable jury to conclude that he was intoxicated. We disagree.

In reviewing the sufficiency of the evidence, our task is to determine whether the evidence produced at trial was sufficient for a reasonable juror to find the defendant guilty beyond a reasonable doubt. *State v. Christian*, 184 S.W.3d 597, 602 (Mo.App. E.D.2006). "In making this determination, we accept as true all evidence favorable to the state, including all favorable inferences drawn from the evidence, and we disregard all evidence and inferences to the contrary." *Id.*

Because Defendant did not dispute that he knowingly possessed a loaded firearm, the State, to obtain a conviction under Section 571.030.1(5), was only required to prove that Defendant was intoxicated.

Under Section 571.010, the term "intoxicated" is defined as "substantially impaired mental or physical capacity resulting from introduction of any substance into the body[.]" Mo.Rev.Stat. § 571.010(11) (Cum.Supp.2008).

Defendant contends that the testimony elicited from both Detective Taschner and the other officer at the scene was insufficient to prove that he was intoxicated, or "substantially impaired." "However, an officer with experience dealing with intoxicated persons may render an opinion as to intoxication sufficient to sustain a conviction." *State v. Carnahan*, 912 S.W.2d 115, 120 (Mo.App. W.D.1995). Here, both officers testified that they were in contact with intoxicated persons on almost a daily basis, and that based on their observation of Defendant's inability to stand, difficulty walking, and odor of alcohol on his breath, they believed that Defendant was intoxicated. Additionally, the evidence showed that Defendant admitted to Detective Taschner that he had been drinking that day. Based on the officers' observations and testimony in this case, the evidence was sufficient to establish that the Defendant was intoxicated. *See Id.* (holding that the opinion of police officers that the defendant was intoxicated based on his "watery bloodshot glassy eyes, swaying and staggering gait, slurred speech and odor of alcohol on his breath" was sufficient to support the jury's finding that the defendant was intoxicated while possessing a weapon).

Defendant further maintains that the police officer testimony was insufficient because the inconsistencies in Detective Taschner's testimony and police report "undermined his credibility", and the officers' belief that Defendant was intoxicated "was never substantiated because they failed to perform any sobriety tests[.]" Defendant's proposed deficiencies in the State's evidence relate to matters of wit-

ness credibility, which are beyond our scope of review. Rather, "[t]he 'credibility and the effects of conflicts or inconsistencies in testimony are questions for the jury.'" *State v. Gilpin*, 954 S.W.2d 570, 579 (Mo.App. W.D.1997) (quoting *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989)). Conversely, our task is limited to determining whether the State adduced sufficient evidence to present a submissible case to the jury. *Christian*, 184 S.W.3d at 602. As discussed above, the police officer testimony adduced in this case was sufficient to support the jury's finding that Defendant was intoxicated. Therefore, the trial court did not err in entering a judgment and sentence, and denying Defendant's motion for acquittal. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

KURT S. ODENWALD, P.J., and GLENN A. NORTON, J., Concur.