**Vincent M. TRAPANI, Appellant,**

v.

**STATE of Missouri, et al., Respondents.**

**WD 79580**

Missouri Court of Appeals, Western District.

OPINION FILED: February 14, 2017

Roger M. Gibbons, Osage Beach, MO, for appellant.

Mark A. Richardson, Jefferson City, MO, for respondent.

Before Division Three: Karen King Mitchell, Presiding Judge, Victor C. Howard, Judge and Gary D. Witt, Judge

Gary D. Witt, Judge

Vincent M. Trapani ("Trapani") appeals from the judgment of the Circuit Court of Cole County denying his Petition for Expungement of Arrest Records ("Expungement Petition"). Trapani's arrest arose out of the shooting of his brother Anthony Trapani ("Anthony")[1] on December 17, 2011. The court heard the case and denied Trapani's request for expungement as the court found that Trapani failed to meet the statutory requirements for expungement with respect to both his arrest for first-degree domestic assault and unlawful use of a weapon. We affirm.

## Factual Background

In July of 2014, Trapani filed his Expungement Petition pursuant to section 610.122,[2] seeking the expungement of all records related to his arrest on December 17, 2011. Trapani's arrest arose out of a shooting incident at the home he shared with his brother Anthony and Anthony's wife, Shay Trapani ("Shay"). On December 17, 2011 at approximately 1:00 a.m., law enforcement officers were called to the residence. At the residence, Anthony was found with a bullet wound to his left hand and abdomen. Anthony had been shot once with the bullet travelling through his left

---

1. As Anthony Trapani, Shay Trapani, and Jim Trapani all share the same surname with Vincent Trapani, we will refer to each of these individuals by his or her first name. No familiarity or disrespect is intended.

2. All statutory references are to the Revised Statutes of Missouri 2000 as currently supplemented, unless otherwise indicated.

hand and his abdomen and then exiting his back.

During their investigation, officers learned that both Shay and Trapani were present at the time of the shooting. A detective overheard Trapani state several times that the shooting was an accident and tell family members that Anthony accidentally shot himself.

Shay told law enforcement that prior to the incident all three had been at a tavern drinking alcohol. She also stated that she did not see the shooting but overheard part of the conversation between Trapani and Anthony immediately prior to the shooting. Anthony wanted to show Trapani his gun. She heard Anthony tell Trapani that he had removed the magazine from the gun, and Trapani asked Anthony whether the gun would go off if he pulled the trigger. Shay then heard the gun discharge.

Law enforcement spoke to Trapani shortly after their arrival. Trapani smelled of alcohol and his eyes were bloodshot. A search warrant to obtain evidence of Trapani's blood alcohol content was sought and issued. Three hours after the shooting, Trapani had a blood alcohol content of 0.063.

Trapani was arrested for domestic assault in the first degree and unlawful use of a weapon. Trapani was eventually charged with domestic assault in the second degree, but the charge was later dismissed by the State and never went to trial.

The State opposed Trapani's Expungement Petition, arguing that Trapani's arrest was not based on false information and that there was probable cause at the time of the expungement action to believe that Trapani committed the offenses for which he was arrested. The trial court denied Trapani's Expungement Petition. Regarding his arrest for first-degree domestic assault, the court found Trapani failed to prove both that (a) his arrest was based on false information and (b) there was no probable cause at the time of the expungement action to believe that Trapani committed the offense. Regarding his arrest for unlawful use of a weapon, the trial court found that Trapani failed to show that there was no probable cause at the time of the expungement action to believe he committed the offense. This appeal follows. Additional facts will be included in the analysis section below as necessary.

## Standard of Review

▇▇▇ In reviewing court-tried cases, we affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Adum v. St. Louis Metropolitan Police Dep't*, 423 S.W.3d 327, 328 (Mo. App. E.D. 2014). The trial court's application of statutory requirements is a question of law rather than fact; therefore, we review the trial court's application of statutory requirements de novo. *Sutton v. Municipal Court Division, Des Peres*, 462 S.W.3d 446, 448–49 (Mo. App. E.D. 2015). Additionally, the credibility of the witnesses is for the determination of the trial court, which is free to believe none, part, or all of the testimony. *Maserang v. Crawford County Sheriff's Dep't*, 211 S.W.3d 118, 121 (Mo. App. S.D. 2006). We defer to the trial court's determination of the witnesses' credibility. *Id.*

*Doe v. Mo. State Hwy. Patrol Criminal Records Repository*, 474 S.W.3d 171, 174 (Mo. App. E.D. 2015).

## Analysis

### Point One

In Point One on appeal, Trapani argues the trial court erred in denying his Ex-

pungement Petition for his arrest for domestic assault in the first degree because the trial court erroneously applied the law because the evidence established that (a) Trapani's arrest for domestic assault in the first degree was based on false information; (b) there was not probable cause at the time of the expungement action to believe that he committed the offense of domestic assault in the first degree; and (c) Trapani was innocent of the offense.

Section 610.122 provides, in relevant part, that a record of arrest may be expunged if the following criteria are satisfied:

> 1. Notwithstanding other provisions of law to the contrary, any record of arrest recorded pursuant to section 43.503 may be expunged if:
>> (1) The court determines that the ***arrest was based on false information*** **and** the following conditions exist: (emphasis added)
>> (a) There is no probable cause, at the time of the action to expunge, to believe the individual committed the offense;
>> (b) No charges will be pursued as a result of the arrest; and
>> (c) The subject of the arrest did not receive a suspended imposition of sentence for the offense for which the arrest was made or for any offense related to the arrest;
>
> 2. A record of arrest shall only be eligible for expungement under this section if:
>> (1) The subject of the arrest has no prior or subsequent misdemeanor or felony convictions; and
>> (2) No civil action is pending relating to the arrest or the records sought to be expunged.

(emphasis added); *see also In re Dyer*, 163 S.W.3d 915, 918 (Mo. banc 2005); *Coleman v. Mo. State Criminal Records Repository*, 268 S.W.3d 464, 466 (Mo. App. E.D. 2008).

Here, Trapani only challenges the trial court's findings that Trapani's arrest was not based on false information and there existed probable cause to believe he committed the offense at the time of the expungement hearing. Trapani does not challenge the trial court's findings that the remaining statutory factors were satisfied.

 We will first consider whether Trapani's arrest was based on "false information." "In order for a petitioner to establish that his arrest was based on false information, the petitioner must prove that some or all of the information that the police relied on to arrest him was false." *Doe*, 474 S.W.3d at 176 (citing *In re Dyer*, 163 S.W.3d at 918–19). "False" is not defined by statute so, in order to determine legislative intent, we construe words in their plain, ordinary, and usual sense, usually derived from the dictionary. *Martinez v. State*, 24 S.W.3d 10, 16 (Mo. App. E.D. 2000). Black's Law Dictionary defines "False" as follows: "1. Untrue <a false statement>. 2. Deceitful; lying <a false witness>. 3. Not genuine; inauthentic <false coinage>. ● What is false can be so by intent, by accident, or by mistake. 4. Wrong; erroneous <false step>." *False*, BLACK'S LAW DICTIONARY (10th ed. 2014). As interpreted by our Supreme Court,

> [t]o establish that the arrest was based on "false information" the petitioner in most cases must prove that the alleged victim—who knew the petitioner and on whose accusation his arrest was based—had falsely accused the petitioner. *Martinez v. State*, 24 S.W.3d 10, 20 (Mo. App.[E.D.]2000). In all cases, the petitioner must prove that some or all of the information upon which the police relied to arrest the petitioner is simply a lie.

*In re Dyer*, 163 S.W.3d at 918–919. "False information" under this statute has also

been held to "include situations where an officer relies on a mistaken belief that a criminal law applies to conduct that is unquestionably not illegal." *Doe v. St. Louis Cty. Police Dep't*, 505 S.W.3d 450 (Mo. App. E.D. 2016).

▮ In the case at bar, there is no accuser as such but rather an investigation of the facts by law enforcement that led law enforcement to conclude Trapani, in the shooting of his brother, had committed a crime.

Trapani identifies what he believes are two pieces of "false information" relied upon by law enforcement when they arrested him for first-degree domestic assault. The first piece of alleged "false information" is contained in a report submitted by Detective Ryan Petty ("Detective Petty"). In the report, Detective Petty recounts that he arrived at the scene of the alleged crime at approximately 1:45 a.m., approximately 45 minutes after police initially responded and an hour after the shooting occurred, and that Sergeant Thurman "explained Anthony was shot by his brother Vincent and as of now that was all they knew." The report immediately continues to relay that Jim Trapani, Anthony and Trapani's father, reported that Trapani repeatedly stated that the shooting was an accident. Trapani argues that the information relayed by Sergeant Thurman—that Trapani shot Anthony and that is all law enforcement knew at that time—is false, as Detective Petty had learned from other sources that Trapani claimed the shooting was an accident.

We disagree that Sergeant Thurman's statement to Detective Petty as set forth

in the report constituted false information. The statement was made very early in the investigation and relayed the information presumably known for certain at the time by Sergeant Thurman. The report merely includes this information in the narrative of the investigation, which then immediately continues to recite additional information learned by the detective, such as the fact that Trapani claimed the shooting was an accident. There is no reasonable argument that Sergeant Thurman's statement was "false information." Nor is there a reasonable argument that this information was relied upon to support Trapani's arrest as it is clear in the same report that Trapani's claim that the shooting was an accident was also known to law enforcement prior to his being placed under arrest.

▮ Trapani also claims that "[t]he false information that Detective Petty relied upon in arresting Vincent for domestic assault in the first degree also included Detective Petty's statement or belief, as set forth in the probable cause statement that Vincent had 'knowingly pointed' a firearm at Anthony and pulled the trigger." As is evident in Trapani's claim, Trapani does not identify *false information* relied upon by Detective Petty but rather contests what Trapani believes was an unjustified inference from the facts that he "knowingly pointed a firearm at Anthony and pulled the trigger." At the evidentiary hearing, Trapani testified that he pulled the trigger of the firearm and Anthony was in the way.[3] Although Trapani denied having knowingly done so, the evidence was and is that he intentionally pulled the trigger and his brother was in the path of the bullet.

---

**3.** This testimony is inconsistent with the detective who overheard Trapani tell family members that **Anthony accidentally shot himself**. A knowingly false statement made to conceal a crime can be used to infer consciousness of guilt. *State v. Jacobs*, 421 S.W.3d 507, 513 (Mo. App. S.D. 2013). The trial court specifically found this statement by Trapani to show "a guilty mind trying to deflect responsibility."

He did, in fact, knowingly point the firearm at Anthony and he did pull the trigger.

What Trapani actually denies is that he knowingly caused serious physical injury to his brother because he mistakenly believed at the time he pulled the trigger that the gun was unloaded. He argues that because law enforcement knew at the time of the arrest that Trapani believed the gun was unloaded when he shot his brother, he did not "knowingly cause" "serious physical injury" to his brother as required by section 565.072.1, the statute defining first-degree domestic assault. Trapani has not identified any information relied upon by law enforcement to justify his arrest for first-degree domestic assault that was false, in the sense that it was untrue, erroneous, or a lie.[4] Rather, Trapani contests the conclusion that law enforcement drew from the facts available to them at the time of his arrest.

Trapani analogizes this case to *Doe v Missouri State Highway Patrol Criminal Records Repository*, 474 S.W.3d 171 (Mo. App. E.D. 2015). In *Doe*, the petitioner sought to have his arrest for three counts of third-degree assault expunged. *Id.* at 173. The petitioner was accused of shooting a random passerby out of his vehicle with an air gun. *Id.* at 174. No witness saw the petitioner actually shoot the air gun, but it appears that law enforcement was able to track down the petitioner by running the plates on the vehicle used in the crime, which was registered to him. *Id.* At the hearing, the evidence was that the petitioner's brother was in fact the individual who shot individuals with the air gun. *Id.* The court found the following with regard to the false information:

> The false information relied on was that Doe, the individual driving the car, was also the person who shot the air gun. The undisputed evidence presented at the hearing established that Doe was driving the car when, unbeknownst to him, his younger brother shot the air gun. The police located Doe and his younger brother through tracking the license plate number of Doe's car. MSHP did not present evidence to establish that an officer observed Doe shoot the air gun, that Doe was aware of his brother's plan to shoot the air gun, or that Doe was present for the two prior incidents of assault.

*Id.* at 176–77. In *Doe*, the police inferred based on no evidence whatsoever that because the petitioner owned the car that he was responsible for the assaults. In the case at bar, the police knew that Trapani, while intoxicated, pointed the gun at his brother and pulled the trigger. The gun was not discharged accidentally. Trapani's arguments regarding whether he believed the gun was loaded when he " 'knowingly pointed' a firearm at Anthony and pulled the trigger" is not a dispute regarding *false* information—it is true information— rather, the argument is about whether the State could prove beyond a reasonable doubt that Trapani committed first-degree domestic assault given his claim that he believed the gun was not loaded when he

---

4. In *Doe*, the Eastern District has recently held that "false information", liberally construed, includes a situation in which law enforcement initiates an arrest for conduct that "unquestionably not illegal" but the officer mistakenly believes is illegal 505 S.W.3d at 455, 2016 WL 7321749, at *4. In *Doe*, the officer mistakenly believed it was a crime for a person with a concealed carry permit to bring the firearm to the airport security checkpoint. *Id.* According to the Court, under Missouri law, that is not a crime. *Id. Doe* has no direct relevance here as intentionally shooting a family member is, under most circumstances, a crime.

pulled the trigger.[5]

We conclude Trapani has failed to meet his burden to show that his arrest was based on "false information." Because we have concluded Trapani failed to satisfy this element, it is unnecessary to consider whether at the time of the expungement action there was probable cause to believe Trapani committed the offense.

Point One is denied.

## Point Two

■ In Point Two on appeal, Trapani argues the trial court erred in denying his Expungement Petition for the expungement of his arrest records related to the charge of unlawful use of a weapon because the trial court erroneously applied the law because the evidence established that (a) Trapani's arrest for unlawful use of a weapon was based on false information; (b) there was not probable cause at the time the expungement action to believe that he committed the offense of unlawful use of a weapon; and (c) he was innocent of the offense.

■ The trial court found there was probable cause to believe, at the time of the expungement action, that Trapani committed the offense of unlawful use of a weapon. We will, therefore, consider this element first. Section 610.122.1 requires Trapani to prove that "[t]here is no proba-

ble cause, at the time of the action to expunge, to believe [he] committed the offense."

> Probable cause here is different than what is required to justify an arrest. In this context "probable cause" is intended in the broad sense of "reasonable cause," of "having more evidence for than against," and of facts which would cause a reasonably intelligent and prudent person to believe "that the accused person had committed the crime charged."

*In re Dyer*, 163 S.W.3d at 919 (quoting Martinez, 24 S.W.3d at 20).

Section 571.030.1(5)[6] provides that a person commits the crime of unlawful use of a weapon where he or she

> [h]as a firearm or projectile weapon readily capable of lethal use on his or her person, while he or she is intoxicated, and handles or otherwise uses such firearm or projectile weapon in either a negligent or unlawful manner or discharges such firearm or projectile weapon unless acting in self-defense.

The trial court found, and we agree, that there is probable cause to believe that Trapani committed the offense of unlawful use of a weapon in that while he was intoxicated he handled a firearm and that he did so in a negligent manner.[7]

5. Trapani makes explicit at the end of his argument in Point One what we have found is implicitly argued, which is that the real complaint by Trapani is that the police should have arrested him for domestic assault in the second degree rather than in the first degree. One can commit the crime of domestic assault in the second degree by recklessly causing physical injury by means of a deadly weapon. *See* Section 565.073.

6. Section 571 has been recently amended by the Missouri Legislature effective January 1, 2017. Accordingly, all references to section

571 *et seq.* will be to the provisions in effect on December 17, 2011.

7. Trapani argues that the probable cause statement to support his arrest asserted that the basis for the charge was that he knowingly discharged a firearm while intoxicated. All the probable cause statement say is "[t]here is probable cause to believe that Vincent committed the crime of Unlawful Use of a Weapon due to the fact that while he was intoxicated he possessed and discharged a firearm." We see no reason that this statement could not support an arrest for the crime for either

Section 571.010 defines "intoxicated" as "substantially impaired mental or physical capacity resulting from introduction of any substance into the body." *See State v. Dvorak*, 295 S.W.3d 493, 503 (Mo. App. E.D. 2009). Trapani, Anthony, and Shay had visited a local tavern and consumed alcohol immediately prior to the shooting. Trapani testified at trial that he had two tall pints of beer and a shot of liquor. In addition, the officer at the scene smelled a strong odor of alcohol coming from his breath and his eyes were bloodshot. Three hours after the shooting, Trapani's blood alcohol content was 0.063, which, given that Trapani did not consume any alcohol after the shooting, is evidence from which a fact finder could infer that at the time of the shooting Trapani was intoxicated. At trial, although Trapani maintained he did not believe alcohol had impaired his judgment, he admitted the assertion was "naïve" and accepted that he was feeling the effects of alcohol that night "to a degree."

In addition, unlike a criminal case where the state bears the burden of proving that there was in fact probable cause for the arrest, in an expungement action it is the petitioner who bears the burden to establish before the trial court that there was not probable cause to believe he committed the offense at the time of the expungement action. *See Martinez*, 24 S.W.3d at 20 (petitioner's burden to establish innocence by a preponderance of the evidence). In this case, at trial, Trapani did not call any of the officers who were at the scene prior to his arrest. Only the reports the officers prepared were offered into evidence. There may have been other indicators of intoxication that were observed prior to Trapani's arrest. The failure to call these witnesses cuts against Trapani, as he had the burden of proof at trial. *See* the discharge or negligent handling of the

*State v. Woods*, 458 S.W.3d 352, 367–368 (Mo. App. W.D. 2014).

Regarding his negligence, the evidence was that Trapani pointed the gun in his brother's direction and pulled the trigger without confirming that there was no bullet in the chamber of the gun. The fact that Trapani pointed a firearm at another person and pulled the trigger without personally determining whether the gun was loaded is clear negligence. The fact that Anthony was actually shot proves the firearm was loaded when Trapani handled the firearm. We conclude that there was probable cause at the time of the expungement action to believe Trapani, while intoxicated, handled a firearm in a negligent manner.

Contrary to Trapani's argument on appeal, section 571.030.1(5) does not require proof that he had actual knowledge that the gun was loaded in order to support a finding of probable cause. All that section requires for conviction is that the defendant be intoxicated and he handle the firearm in a negligent manner or discharge that firearm. *See* MAI 331.24 (2011). Trapani has cited no authority to support his contention that in order to be guilty of the offense he must have known the firearm was loaded. Such a reading would also be absurd as it would be contrary to the intent of the statute and reward intoxicated persons for failing to inquire whether the firearm they are handling is loaded. *See State v. Richard*, 298 S.W.3d 529, 532 (Mo. banc 2009) ("[S]ection 571.030.1(5) represents a reasonable exercise of the legislative prerogative to preserve public safety by regulating the possession of firearms by intoxicated individuals").

We agree with the trial court that there was probable cause at the time of the firearm.

expungement action to believe that Trapani committed the offense of unlawful use of a weapon. Therefore, it is unnecessary to inquire further to determine whether Trapani's arrest for this offense was based on false information.[8]

Point Two is denied.

[8] Having reviewed Trapani's allegations regarding false information supporting his arrest for Unlawful Use of Weapon, we also fail to see any "false information" relied upon by law enforcement. Trapani's argument neglects that he could be found guilty of the offense for the negligent handling of a firearm while intoxicated. Further, his argument regarding the "false information" regarding his intoxication is undermined by the fact that the evidence strongly suggests, as he admitted at trial, that he was impaired by alcohol at the time of the shooting. *See State v. Pickering*, 473 S.W.3d 698, 704 (Mo. App. W.D. 2015).

## Conclusion

The judgment of the trial court is affirmed.

All concur.